**Harry H. ISAACS, Appellant,**

v.

**UNITED STATES of America,** Appellee.

No. 15964.

United States Court of Appeals Eighth Circuit.

June 27, 1958.

Melvin H. Siegel, Minneapolis, Minn. (Leonard, Street & Deinard, Minneapolis, Minn., were with him on the brief), for appellant.

George E. MacKinnon, U. S. Atty., and Kenneth G. Owens, Asst. U. S. Atty., St. Paul, Minn. (Clifford Janes, Asst. U. S. Atty., St. Paul, Minn., was with them on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment finding appellant guilty of contempt of court because of his refusal to answer certain questions originally put to him as a witness before a Federal grand jury. Appellant was subpoenaed to appear before the United States Grand Jury for the District of Minnesota on January 29, 1958. The grand jury was then investigating the possible criminal violation of the Internal Revenue laws by reason of the failure of a person or persons unknown to report as income some $99,000 paid out in cash by the American Iron and Steel Company, of which appellant was president and majority stockholder, during the years 1953 and 1954.

American Iron and Steel Company maintained a special account or cash fund from which it paid suppliers of scrap from time to time in cash. During the period from October 13, 1953, through September 14, 1954, it issued

seventeen checks totaling $101,000 made payable to "Cash" and signed on behalf of the company by appellant in two instances and by his son in the others. Some $99,000 of the proceeds of these checks, though charged on the books of the company to purchases and deducted as expenses in the company's Federal income tax returns for the years in question, were not transferred to the special account for scrap purchases and the company's books nowhere reflected to whom the monies were disbursed. Testimony was given before the grand jury that during the course of an audit in 1957 of the company's tax returns for the years ending July 31, 1953, and July 31, 1954, the $99,000 was disallowed as expenses because American Iron and Steel Company and its officers declined to state to whom the monies were paid. An Internal Revenue Agent testified that appellant's son, Fred Isaacs, declined to state to whom the $99,000 was disbursed because the recipients "had not reported it as gross income" on their Federal income tax returns. The company accordingly paid an additional tax for those years. Appellant declined to answer any questions as to the disposition of the $99,000 on the ground that his answers might tend to incriminate him. At this stage of the proceeding before the grand jury the following occurred:

"Q. And has it been called to your attention or do you know whether there were a substantial number of checks between October, 1953 and September, 1954 of checks made out to Cash and cashed by American Iron and Steel Company that were not entered in the account of that special fund? A. I refuse to answer that; I stand on my constitutional rights.

"Q. Now, Mr. Isaacs, you have been a substantial business man in Minneapolis for some years? A. Yes, sir.

"Q. And you consider yourself a man of good reputation in Minneapolis?· A. Yes, sir.

"Q. And you recognize and you have always recognized, I presume, that it's an obligation of a person to aid and assist the Government and the Courts and their juries in fulfilling their obligations? A. Yes, sir.

"Q. And you consider that you are a person who performs your obligations to people—A. Yes, sir.

"Q. Now, with that in mind, this jury is asking and would like to know if there were such checks during that period? A. Beg pardon?

"Q. If there were checks drawn on that general fund? A. I refuse to answer and stand on my constitutional rights.

"By Mr. MacKinnon:

"Q. Well, what do you mean, Mr. Isaacs? This is very alarming to me. We are not prosecuting you. Your sole ground for claiming that privilege rests upon the fact that you have been guilty of some crime. A. No. I haven't, but I've made—

"Q. Well, then, if you have not been guilty of a crime you have to answer the question, because the extent of your constitutional right is to protect yourself from giving evidence against yourself of a crime. There isn't any other right that you have to refuse to testify except that. Now, if you have been guilty of a crime and you want to say so on that stand under oath, then you have got a constitutional right to refuse to testify. But frankly, we didn't think you had, and that's the reason we called you. A. Well, I've taken it up with my attorneys and that's their advice, so I have to stand on it.

"Q. Well, you said though that you have not been guilty of any crime. A. As far as I know, no.

"Q. Well, we're not prosecuting you for any crime. A. I don't know.

"Q. Well, I can tell you that. A. I still stand on my constitutional rights.

"Q. You don't have a constitutional right. A. I don't?

"Q. No, sir, not to testify unless you've been guilty of a crime. If you have been guilty of a crime, you've got a constitutional right. * * * *"

Appellant was further interrogated with reference to various business transactions of and various checks issued by American Iron and Steel Company, to much of which he declined to answer, claiming that his answers might tend to incriminate him.

He was then taken before the District Court accompanied by his attorney, Mr. Siegel, whereupon the United States Attorney moved the court for an order directing appellant to answer certain questions which he had declined to answer before the grand jury and also to answer questions as to the names of the recipients of the $99,000. In the course of the hearing before the court, the court asked the United States Attorney:

"The Court: And from what Mr. Isaacs did state in response to your questioning before the Grand Jury, you are satisfied in your own mind that he is not a recipient of such money?

"Mr. MacKinnon: Well, I wouldn't necessarily conclude that completely. But he had made previous statements—I think that is the state of the record, that he had made previous statements, he or other people with the American Iron & Steel—that this money was paid to other people who had not reported it, and for that reason they were going to pay the tax on it and not claim it as a deduction."

Appellant's attorney then inquired of the United States Attorney whether "if any evidence were adduced in the course of this investigation that any of this money got into the hands of either of the Isaacs, the United States Attorney will say now that it won't prosecute?", to which the United States Attorney replied

that he would "have to prove it by other evidence than anything he ever gave me or any lead that I ever got from his testimony". The United States Attorney upon being interrogated by the court as to whether he could extend immunity to appellant if he should answer the questions in controversy said:

"Mr. MacKinnon: We can't give any immunity except such immunity as he naturally acquires if he does testify under compulsion to some incriminating circumstances."

Whereupon the court said:

"The Court: He is testifying under compulsion here, and we have heard the questions read that you want answered. I think there is one additional question that may be all-inclusive, that you may want to ask, and that is, 'Will you please name the payees of those checks?'

"Mr. MacKinnon: That is right.

"The Court: Those are all the questions you have in mind asking him, on which he is fearful of self-incrimination?

"Mr. MacKinnon: That is right.

"The Court: I will say this, Mr. Siegel, that this Court will advise the witness, Mr. Harry H. Isaacs, in open court that he will be directed to answer those questions and that the Court will extend immunity to him in connection with the answers he may make thereto."

Thereupon, the court below ordered that appellant answer certain questions which he had refused to answer before the grand jury and further ordered that "as a condition to the said witness, Harry H. Isaacs, conforming to the direction of the Court in the foregoing respect, that the Court does hereby extend immunity to him in connection with any answer he may give to said questions or for any prosecution by reason of receipt himself or payment to anyone of the monies in question". Whereupon, appellant was brought before the grand jury where he again declined to answer the interrogatories as to the $99,000 or

as to who received the same, on the ground that the answers might tend to incriminate him. Appellant was then ordered to appear before the District Court to show cause why he should not be adjudged in contempt of court for failure to answer as ordered. After hearing the court found appellant guilty as charged and sentenced him to thirty days imprisonment. Further facts in connection with the proceedings before the court and grand jury will be developed in the course of this opinion.

On this appeal appellant in substance contends that: (1) under the Fifth Amendment a witness may decline to answer questions before a grand jury if the answers may possibly tend to incriminate him, (2) appellant's assertion that he was not guilty of any Federal offense did not deprive him of any right to invoke the protection of the Fifth Amendment, (3) the fact that the United States Attorney asserted that he was not investigating or prosecuting appellant did not preclude any possibility that appellant's answers to the questions involved might tend to incriminate him or deprive him of his privilege not to answer under the Fifth Amendment, and (4) the court below was without power to grant appellant immunity from prosecution.

■ The Fifth Amendment to the United States Constitution provides that no person shall be compelled in any criminal case to be a witness against himself and one called as a witness before a grand jury may in a proper case invoke the protection of the Fifth Amendment. The right not to be compelled to be a witness against himself in a criminal case has traditionally been regarded as a sacred one and the privilege not so to testify may be invoked both by the guilty and the innocent. Thus in United States v. Burr, 25 Fed.Cas. page 38, No. 14,692e, when the United States Constitution was still in its infancy, Chief Justice Marshall said:

"If a direct answer to it *may* criminate himself, then he must be the sole judge what his answer would

be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims.

\*　\*　\*　\*　\*　\*

"Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself."

■ The law on this question as developed and exemplified by recent controlling opinions of the Supreme Court is fairly well settled but the difficulty arises in applying the principles of law so announced to the particular facts or setting in each case. In doing so we are admonished that this provision of the amendment must be accorded liberal construction in favor of the right it was intended to secure. To warrant a denial of the privilege it must appear in the setting in which the question is asked that the answer cannot possibly have a tendency to incriminate. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118; Greenberg v. United States, 343 U.S. 918, 72 S.Ct. 674, 96 L.Ed. 1332; Singleton v. United States, 343 U.S. 944, 72 S.Ct. 1041, 96 L.Ed. 1349; Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997; Kiewel v. United States, 8 Cir., 204 F.2d 1; United States v. Coffey, 3 Cir., 198 F.2d 438; Ballantyne v. United States, 5 Cir., 237 F.2d 657. In Hoffman v. United States, supra [341 U.S. 479, 71 S.Ct. 818], the court said:

"The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. \* \* \* To sustain the privilege, it need only be evident from the implications of

the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. * * *

   *    *    *    *    *    *

"In this setting it was not *'perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) *cannot possibly* have such tendency' to incriminate. Temple v. Commonwealth, 1881, 75 Va. 892, 898, cited with approval in Counselman v. Hitchcock, 1892, 142 U.S. 547, 579–580, 12 S.Ct. 195, 35 L.Ed. 1110. See also, Arndstein v. McCarthy, 1920, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 1380.

   *    *    *    *    *    *

" * * * If this result adds to the burden of diligence and efficiency resting on enforcement authorities, any other conclusion would seriously compromise an important constitutional liberty. 'The immediate and potential evils of compulsory self-disclosure transcend any difficulties that the exercise of the privilege may impose on society in the detection and prosecution of crime.' United States v. White, 1944, 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542. Pertinent here is the observation of Mr. Justice Brandeis for this Court in McCarthy v. Arndstein, 1924, 266 U.S. 34, 42, 45 S.Ct. 16, 17, 69 L.Ed. 158: 'If Congress should hereafter conclude that a full disclosure * * * by the witnesses is of greater importance than the possibility of punishing them for some crime in the past, it can, as in other cases, confer the power of unrestricted examination by providing complete immunity.' "

In Emspak v. United States, supra [349 U.S. 190, 75 S.Ct. 692], in an opinion by Chief Justice Warren speaking for the court, it is said:

"The protection of the Self-Incrimination Clause is not limited to admissions that 'would subject (a witness) to criminal prosecution'; for this Court has repeatedly held that 'Whether such admissions by themselves would support a conviction under a criminal statute is immaterial' and that the privilege also extends to admissions that may only tend to incriminate."

In United States v. Coffey, supra [198 F.2d 440], the court after reviewing the Hoffman, Greenberg and Singleton cases, supra, summed up its conclusion as to the present state of the law as follows:

"Accordingly, we now have to reinterpret the Supreme Court's Hoffman opinion in the light of that Court's subsequent revelation that Hoffman proceeds on a theory broad enough to require the same result in the circumstances of Greenberg and Singleton. Specifically, we think the problem is what to do about apparently innocuous questions, the answers to which are admittedly not incriminating in themselves, when there are no additional facts before the Court which suggest particular connecting links through which the answer might lead to and might result in incrimination of the witness. We think the Supreme Court is saying that such facts are not necessary to the sustaining of the privilege. The decision in the Mason case [Mason v. U. S., 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198] would not be followed today. It is enough (1) that the trial court be shown by argument how conceivably a prosecutor, building on the seemingly harmless answer, might proceed step by step to link the witness with some crime against the United States, and (2) that this suggested course and scheme of linkage not seem incredible in the circumstances of the particular case. It is in this latter connection, the credibility of the suggested connecting chain, that the

reputation and known history of the witness may be significant.

"Finally, in determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry."

In the instant case the United States Attorney advised the appellant, while seeking to induce him to answer the interrogatories here involved, that he might invoke the protection of the Fifth Amendment only if he were guilty of a crime, and apparently the court was also of this view. Such an interpretation would unduly abridge and render ineffectual the protection guaranteed by the Constitution, which manifestly protects the innocent as well as the guilty. In Kiewel v. United States, supra [204 F.2d 4], in discussing the sufficiency of the evidence to sustain a conviction we said inter alia:

"Was there reasonable possibility from the nature of the inquiry made of Respondent that he was in danger of incriminating himself in answering the questions propounded to him? * * * It is incumbent upon us, therefore, to examine the circumstances under which the questions were propounded, and their implications, and if therefrom we conclude that there is reasonable ground to believe that the investigation of the subject matter of the inquiry might lead to the incrimination of Respondent, should he make the answers requested, we must enforce the privilege, unless, as stated in the Hoffman case, it is perfectly clear that Respondent is wrong in believing that answering the particular questions could possibly have a tendency to incriminate him."

▇ The grand jury in the instant case was investigating the possible criminal violation of the Internal Revenue laws by reason of the failure of a person or persons unknown to report as income some $99,000 paid out in cash by the American Iron and Steel Company during the years 1953 and 1954. Apparently the recipients of these funds were guilty of the crime of evading the payment of income taxes on the funds so received. Appellant was asked to give the names of the recipients of these funds, thus possibly furnishing the link connecting appellant, either with aiding or abetting the recipients of the funds in the commission of the crime or in conspiring with them to commit the crime, and as suggested by counsel for appellant, "Anyone who aided and abetted the recipients of the $99,000.00 to conceal the receipt of taxable income, or conspired with them to do so, could be convicted of a crime under 18 U.S.C. Secs. 2 and 371." It can also be possible that appellant received part of this $99,000 himself and failed to report it for Federal income tax purposes, or even that some of the withdrawals made by him for others were taxable to him. In fact, the grand jury was apparently investigating his record as to the payment or non-payment of income taxes because it had subpoenaed his accountants to produce before it all their records relative to his personal income tax returns for the years 1952 to 1957. In the Kiewel case, supra, we reversed on the ground that Kiewel himself might have retained some of the monies or that some of his withdrawals for others were taxable to him and were unreported. On this phase of the case we are of the view that there was a reasonable possibility that the answers to the questions propounded might tend to incriminate appellant.

▇ It is, however, argued by the government that the appellant waived his privilege by asserting that he was not guilty of any Federal offense. In approaching this contention we must have in mind the rule that the courts must "indulge every reasonable presumption against waiver of fundamental constitutional rights." Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed.

1461. The argument implies that testimony will never tend to incriminate an innocent person. Guilt or innocence is usually a question to be determined by a jury and we may take judicial notice of the fact that many an accused person on trial is found to be not guilty. In such cases we may assume there was evidence tending to show that the accused, though innocent, was guilty of a crime, otherwise there would have been no prosecution. In the instant case appellant distinctly claimed the privilege of refusing to answer the interrogatories propounded to him. The mere fact that in answer to the question of the United States Attorney he said he was not guilty of a crime as far as he knew is a far cry from an intentional waiver of his privilege. Emspak v. United States, supra; United States v. St. Pierre, 2 Cir., 128 F.2d 979; Ballantyne v. United States, supra; United States v. Costello, 2 Cir., 198 F.2d 200; United States v. Courtney, 2 Cir., 236 F.2d 921. In United States v. St. Pierre, supra [128 F.2d 980], the court answering the argument that the accused had waived his privilege said:

> "Nor is it material that appellant stated at several points that he had committed no federal crime."

In Ballantyne v. United States, supra [237 F.2d 665], the court said:

> "In any event, the United States Attorney could not, by thus skillfully securing from appellant a general claim of innocence, preclude him from thereafter relying upon his constitutional privilege * * *."

We are clear that the alleged claim of innocence by appellant did not preclude him from relying upon his Constitutional privilege.

▇ The court declared that it would grant immunity from prosecution if appellant would answer the interrogatories and it is argued that in these circumstances the appellant could not rely upon the Constitutional privilege of refusing to answer. The short answer to this contention is that the court was without authority to grant immunity from prose-

cution. The attempt to grant such an immunity was not within the judicial power but was an attempted exercise of executive or legislative power. United States v. Ford, 99 U.S. 594, 25 L.Ed. 399; McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158; Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511.

In view of our conclusions on the issues considered we pretermit consideration of other issues discussed by counsel for the respective parties. The judgment finding appellant guilty of contempt of court is therefore reversed and appellant's present conviction is set aside.