**UNITED STATES of America,**
**Appellee,**

v.

**Armando F. SACASAS, Jr., Appellant.**

**No. 509, Docket 31249.**

United States Court of Appeals
Second Circuit.

Argued June 27, 1967.

Decided Aug. 9, 1967.

Robert L. Latchford, Robert G. Morvillo, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty., Southern District of New York, for appellee.

Irving Anolik, Michael P. Direnzo, New York City, for appellant.

Before WATERMAN and SMITH, Circuit Judges, and LEVET, District Judge.*

WATERMAN, Circuit Judge:

This is an appeal from a judgment of conviction entered in the United States District Court for the Southern District of New York after a three-day trial by jury. Appellant and three others, two of whom had not been identified when appellant was tried, were named in a four count indictment. In the first count all four of them were charged with conspiring to rob a bank in violation of 18 U.S.C. § 371; appellant and the two unidentified defendants, "John Doe" and "Richard Roe," were charged in counts two through four with the substantive offenses of bank robbery, bank larceny, and assault with dangerous weapons in connection with a bank robbery in violation of 18 U.S.C. §§ 2, 2113(a) (b) (d) (f). Appellant's case was severed and he was tried alone, the only other defendant who had been identified having died before trial. The jury found appellant guilty on all four counts, and the trial court sentenced him to twenty years imprisonment on counts two and four, to ten years imprisonment on count three, and to five years imprisonment on count one, all sentences to be served concurrently.

The Government's case proved to the satisfaction, beyond a reasonable doubt, of the jury that appellant was one of four men involved in a bank holdup at a branch bank of the First Westchester Bank in New Rochelle shortly after that bank opened on the morning of July 27, 1966. The robbery was carefully planned and rehearsed by appellant and the other participants, and, examining the evidence in the light most favorable to the Government, the following events transpired.

Two automobiles were used, a blue 1966 Comet, license 7Z5152, and a white 1966 Plymouth, license 7Z3214. Both cars were rented from auto rental agencies on July 18, 1966, by two men, one of whom was appellant, the other Richard L. Mahan, who was living with appellant in appellant's apartment in Bayside, New York. Mahan presented a stolen credit card for identification and signed the rental agreements in the name of the credit card holder.

The blue Comet was obtained from a Hertz agency, the white Plymouth from an Avis. The rental agent at one agency positively identified appellant as one of the two men to whom he rented one of the cars. The other rental agent positively identified Mahan as one of the men renting his car and said that the other resembled appellant but he could not make a positive identification.

Rehearsals for the July 27 robbery and get-away began very soon. On July 20, 21, 22, 25, and 26, appellant and the white car were observed by various persons dwelling in an apartment house at 35 Circuit Road, New Rochelle, a building located near the bank and no more than two minutes by automobile from it. On July 20 a tenant observed him from her apartment window parked in an adjacent parking lot, and after he was joined there by two men she saw them drive away with the trunk of the car open. On July 21 another tenant talked with him and noticed that he had parked the white car, with its trunk open, in the apartment house garage in a space usual-

* For the Southern District of New York, sitting by designation.

ly occupied by the building superintendent's car, and that, after some fifteen minutes of pacing about and moving the car back and forth he drove it out of the garage.

On July 22 a third tenant observed appellant walking back and forth to and from the white car directly under her first floor window. He had occasion to speak to her. She noted that the trunk of the car was open and the motor was running.

On July 25 and 26 he was seen with the car, again with trunk open on each occasion, in this apartment house garage. On the 26th the superintendent of the building, after noting that appellant was wiping the Plymouth, ordered him to remove the car from the garage and into the parking area. There he was joined by two men a half hour later. The superintendent, his suspicions aroused, jotted down the license number 7Z3214.

Also, on July 21, in Bayside, near his apartment, appellant and two other men were observed wiping the interior of the white Plymouth, the appellant wearing rubber gloves. Whenever anyone passed them they ceased wiping the car's interior and wiped the outside.

On the morning of the robbery, July 27, at about 8:30 A.M., two tenants at 35 Circuit Road noted appellant sitting in the Plymouth in the parking lot. One, hearing the engine running, watched him carefully, and, believing his actions suspiciously unusual, noted the license number 7Z3214. She then saw "Doe" and "Roe" arrive at the parking lot in the blue Comet, license 7Z5152, desert that car and hand appellant two pistols, which he put on the front seat of the Plymouth, and two canvas money bags, which he placed under the driver's seat. The two men then climbed into the trunk of the Plymouth, and appellant after making sure they were safely therein slammed down the trunk lid and drove hastily away. She then called the New Rochelle police. The other tenant, from her apartment, saw the men leave the Comet, get into the trunk of the Plym-

outh and saw and heard the Plymouth drive away.

Two men carrying pistols and wearing Halloween masks and surgical rubber gloves held up the bank during the time appellant was so observed awaiting their arrival. One covered the employees with his pistol, the other scooped up $22,301.-65, and they fled in the blue Comet which had been parked in front of the bank. A pedestrian saw them leave the bank and dash off in the car. She noted the license number 7Z5152 and promptly gave it to the New Rochelle police who had quickly answered the bank's alarm. The two cars were recovered, the blue Comet almost immediately by the police, but, as would be expected from the care the robbers had taken to wipe off any evidence thereof, no latent fingerprints were found in either car, though surgical gloves were.

■ Appellant was positively identified in open court by several of the persons who had observed him during the period July 18–27. Despite this overwhelming evidence that appellant was acting in concert with the two robbers who entered the bank and that he aided and abetted them in their successful getaway, appellant maintains that his motion for a directed verdict of acquittal made at the close of the Government's case should have been granted and the issue of defendant's guilt taken away from the jury. Obviously there is no merit to this claim.

Nor do we find any merit in any of appellant's other claims of error, and, accordingly, we affirm the conviction below.

■■ While testifying on direct examination one of the eyewitnesses of appellant's July 20–27 activities stated that, prior to trial, among other photographs shown to her she had been shown a photograph of the appellant and had identified him; also that with other eyewitnesses she had observed him six weeks earlier in the court house. On cross-examination similar information was elicited from other witnesses. This testimony was not objected to at trial and

is now claimed to have been impermissibly admitted. It would appear to have been properly admissible, United States v. Forzano, 190 F.2d 687 (2 Cir. 1951) and, as no objection was made at trial, may not, in any event, be raised on appeal for the first time. United States v. Indiviglio, 352 F.2d 276 (2 Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

Appellant also claims reversible error because the trial court refused to allow him to examine the Jencks Act (18 U.S.C. § 3500) material of various government witnesses. The request was made when court convened on the third day of the trial. The Government had rested its case at lunchtime on the second day, the witnesses involved had all fully testified, had been cross-examined, had been excused and had left the court house. The trial court was well within its discretion in refusing this untimely request. United States v. Kenner, 354 F.2d 780, 784 (2 Cir. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966); United States v. Sheba Bracelets, Inc., 248 F.2d 134 (2 Cir.), cert. denied, 355 U.S. 904, 78 S.Ct. 330, 2 L.Ed.2d 259 (1957).[1]

Appellant was represented at trial by an experienced counsel of his own choosing. This counsel may not have represented appellant flawlessly, but he made no errors of such a fundamental nature as to deny appellant a fair trial. See United States v. Garguilo, 324 F.2d 795, 796 (2 Cir. 1963). The only defense available to defendant, that he was not the man who helped the two men transfer from the Comet to the Plymouth and who drove them away, was fully explored and developed by trial counsel, even to counsel's testifying himself to cast doubt upon the credibility of an F. B. I. agent who had interviewed appellant in counsel's presence. Indeed, in view of all the evidence identifying appellant with the crime it is quite evident to us that the jury reached the correct result in convicting him.

On the day fixed for imposition of sentence appellant moved for a new trial based upon newly discovered evidence. The motion was denied; the purported evidence, if true, would not have been admissible. The ruling is appealed from, though appellant practically concedes it to have been correct. According to one Boyle, a fellow-inmate of the Federal House of Detention with Richard L. Mahan, who had been indicted with appellant, and who, there awaiting trial, died before trial, told Boyle ten minutes before Mahan finally lost consciousness, "If anything happens to me tell them that the Greek had nothing to do with the job." Appellant seeks to persuade that this hearsay evidence should be admissible under the "dying declaration" exception to the exclusion of hearsay. Of course the exception is inapplicable here—Mahan was not dying following a homicidal attack, and neither appellant, "the Greek," nor Mahan had been prosecuted for a homicide. 5 Wigmore, Evidence §§ 1432–1434 (2d ed. 1940).

Conviction affirmed.

1. Because appellant now complains that at his trial he was without the effective assistance of counsel we requested the Jencks Act material and have examined it. This was not done in connection with a review by us of the correctness of the discretionary ruling of the trial judge, for that ruling was well within his discretion irrespective of the content of the Jencks Act material. Our review reveals but very little material that could have been even tangentially useful for cross-examination and no direct contradictions whatever between any witness's trial testimony and pre-trial statements relevant to identification of the appellant as the actor observed by the witnesses.