**In the Matter of Paul E. KELLY.**
**No. LR-72-C-192.**

United States District Court,
E. D. Arkansas, W. D.

Nov. 6, 1972.

Gilbert H. Deitch, Atlanta, Ga., John Fincher, Hale, Hale & Fincher, Little Rock, Ark., for plaintiff.

W. H. Dillahunty, U. S. Atty., O. H. Storey, III, Asst. U. S. Atty., Little Rock, Ark., for defendant.

MEMORANDUM OPINION

EISELE, District Judge.

Paul E. Kelly was subpoenaed by and appeared before the Federal Grand Jury for the Eastern District of Arkansas on September 14, 1972. Mr. Kelly answered two questions propounded by the Assistant United States Attorney and, invoking the Fifth Amendment, refused to answer additional questions. He gave his name and stated that he was "manager of the Sooner State News Agency". Defendant was brought before this Court and was instructed to answer the questions until such time that the Assistant U. S. Attorney advised him that he should consider himself one against whom a charge might be filed.

After returning to the grand jury room the witness again declined to answer the questions of the Assistant U. S. Attorney. He was brought before this Court in a contempt proceeding and held in civil contempt pursuant to 28 U. S.C. § 1826.

Although the Court found, on the witness' first appearance here, that the answers to certain of the questions would not incriminate him, that was not the basis of the Court's contempt ruling. The Court would not have adjudged defendant in contempt on that finding. The Court's ruling is based upon two legal principles which flow from the circumstances of this case. The first is that where the government has informed the witness and the Court that such witness will not be prosecuted on the basis of any testimony given before the grand jury, neither that testimony nor the

fruits of that testimony may subsequently be used against him.[1] He receives, in effect, use immunity from prosecution.

Although this Court bases its ruling primarily on the second principle to be discussed below, it is convinced that because of the representations of the U. S. Attorney, neither Mr. Kelly's testimony, nor evidence derived therefrom, would be admissible against him in a subsequent prosecution. Upon a finding by the court that this promise has been made by the U. S. Attorney, the witness is in no danger of prosecution as a result of his compelled testimony and he has in effect been immunized.[2] This immunity derives from inherent prosecutorial discretion as exercized daily. No court could permit the U. S. Attorney or the Justice Department to renege on such a promise (even if not specifically authorized by act of Congress or his supervisors in the Justice Department) without running afoul of Constitutional principles.

■ The second principle is that a witness before the grand jury, and especially an employee of a company or corporation under investigation by the grand jury, *must be warned* that he might be prosecuted and that his testimony might be used against him and that he has the right not to incriminate himself. If he is not so warned, that testimony and its fruits may not be used against him. This protection, or "immunity" if one prefers, is based upon Constitutional, not statutory, considerations.

In this case, Mr. Kelly and the Court were assured by the office of the U. S Attorney that he would not be prosecuted as a result of any testimony that might be elicited, and the Assistant U. S. Attorney questioning Mr. Kelly at no point informed him that he might be prosecuted. The U. S. Attorney in this District has followed the practice of not prosecuting any witness not so warned.

The Eighth Circuit has not ruled on the question of warnings to a witness before the grand jury, and other circuits have not adopted the position taken by this Court. Judge Clark in United States v. Morado, 454 F.2d 167 (5th Cir. 1972) summarizes the positions of some of the circuits.

"Though this circuit has recently pretermitted the question of the scope of *Miranda* in the context of grand jury investigations, . . ., the general rule is that a grand jury witness is not entitled to warnings of his right to counsel, and his right to remain silent. Robinson v. United States, 401 F.2d 248 (9th Cir. 1968); United States v. DiMichele, 375 F.2d 959 (3rd Cir. 1967); United States v. Winter, 348 F.2d 204 (2nd Cir. 1965);

---

1. Throughout this opinion the Court is excepting from consideration prosecutions for perjury.

2. " . . . Wrongful inducement includes making an unauthorized promise that the person will not be arrested or otherwise prosecuted, Crawford v. United States, 219 F.2d 207 (5th Cir. 1955). Although the prosecution may proceed upon untainted, and thus unsuppressed evidence, in many cases the only evidence available is suppressible, resulting in complete immunity for the alleged offender. . . . Immunity is also conferred when a law enforcement agency or the United States Attorney refrains from prosecuting in order to secure a witness' cooperation. This power of intentional grant of immunity is not based solely on considera-

tions related to the bargain for information. The power is also exercised by law enforcement agencies when they decide to proceed against an offender civilly, administratively, or not at all, i. e., make no recommendation of criminal prosecution to the Department of Justice, or when the United States Attorney declines to prosecute even when the case is brought to his attention. This kind of immunity grant seemingly has been held valid, even though not authorized by statute . . . ". Working Papers of the National Commission on Reform of Federal Criminal Laws, Vol. II, 1419–20 (1970) [hereinafter cited as Working Papers]. See United States v. Carter, 454 F.2d 426 (4th Cir. 1972) and United States v. Levy, 153 F.2d 995 (3rd Cir. 1946).

United States v. Parker, 244 F.2d 943 (7th Cir. 1957); United States v. Sculley, 225 F.2d 113, 116 (2nd Cir. 1955). The Sixth Circuit, however, has recognized that when a man ceases to be merely a witness in a general investigation, but has been placed 'virtually in the position of a defendant,' then he must be afforded the fully (sic) panoply of rights due a defendant in custody. United States v. Luxenberg, 374 F.2d 241 (6th Cir. 1967); Stanley v. United States, 245 F.2d 427 (6th Cir. 1957)."

The distinctions drawn by the courts among various classes of witnesses are actually more subtle than Judge Clark indicates. In this Court's view those distinctions form an inadequate and deceptive premise upon which to predicate nice differentials in treatment.

"Some courts distinguish between actual defendants called to testify before a grand jury (sometimes called *de jure* defendants), witnesses marked for probable prosecution but not formally indicted (sometimes called *de facto* defendants), witnesses marked for possible prosecution, and those witnesses not considered for prosecution. The courts which make these distinctions reason that the process of subpoenaing the witness amounts to compelling his testimony. The more the government has focused upon the witness, the more likely it is that his testimony will be used in a subsequent criminal proceeding against him. If the witness is the accused, most courts require that a caution or warning of the fifth amendment privilege be given. Some courts have extended this protection to 'probable defendants'. Thus where the witness is not warned, even though he does not affirmatively object at the time of questioning, the indictment will be quashed.

"Some jurisdictions require that witnesses formally charged with a crime affirmatively waive fifth amendment protection when appearing before the grand jury, or the indictment is quashed. These rulings give the witness with the 'status' of an actual defendant the right not to be questioned before a grand jury. In a small minority of cases this protection is also extended to include those marked for prosecution.

"The prosecutor can take advantage of the differences in rights afforded witnesses with different status by merely deferring the formal charges until after the grand jury questioning. The rights of a particular witness can turn on the time at which the prosecutor prefers charges. Where distinctions are made between probable and possible defendants, the witness' rights depend on the prosecutor's subjective intent. Additionally, the time at which a witness' status shifts from that of a possible defendant to a probable defendant, as the grand jury questioning advances, can create administrative difficulty. The court is required to view the record to determine what the intent of the prosecutor was. This results in a collateral proceeding outside the grand jury room to determine the witness' status and it exposes the grand jury's secret record.

"For these reasons, most jurisdictions reject the use of a witness' status as the criterion for determining what protection is needed. It is asserted that the fifth amendment privilege is sufficient protection in the grand jury investigation, and being compelled to appear does not constitute being compelled to answer. Thus, the notion that a subpoena constitutes compulsion *per se* is generally rejected.

"The problem of defining a duty to caution the witness of his privilege is more difficult. Certainly those who have had the advice of counsel before entering the grand jury room are aware of the privilege. This would seem to encompass most of the witnesses involved in organized crime and the more sophisticated law breakers. Rather than relying on the presumption that everyone knows the law in

his favor, a uniform duty to notify the witness of his fifth amendment privilege against self-incrimination would not only be in the interests of uniformity and convenience of administration but in the interest of fairness to those few without counsel sitting outside the grand jury room as well." Comment, The Grand Jury Witness' Privilege Against Self-Incrimination, 62 Nw.U.L.Rev. 207, 222–225 (1967). See also comment, Constitutional Law—Privilege Against Self-Incrimination—Requirement of Warning To Witness Testifying Before Grand Jury, 1956 Wash.U.L.Q. 373, 376.

A witness who has not been accused or is not the focus of an investigation is more likely to be uninformed of the privilege. An unknowing waiver of the privilege based upon the U. S. Attorney's subjective classification of the witness places an undue burden on the government and places the witness in one of the most precarious of positions imaginable.

Some courts have reasoned that because of the investigative function and inquisitorial nature of the grand jury, it cannot be burdened with affording a witness the full panoply of procedural safeguards. It is *because* in a grand jury proceeding there is no right to other procedural safeguards that a witness should be told of his right to remain silent.

Again, although this Court subscribes to the broad principle requiring warnings to all witnesses appearing before the grand jury, the witness here, Mr. Kelly, as an employee of the corporation under investigation, was in an even more dangerous situation than the normal witness.

■ It is of no consequence that a witness, as here, has consulted with an attorney before facing the grand jury. It is the duty of the government to warn the witness before questioning him. If it does not, he automatically gets immunity. If it warns him and he refuses to testify, the government may then choose to compel his testimony by granting the traditional statutory immunity.

The Eighth Circuit held in Isaacs v. United States, 256 F.2d 654 (1958), that a federal district court was without authority to grant immunity to a witness before a federal grand jury. Although the Minnesota District Court seemingly found that the U. S. Attorney had promised not to prosecute the witness, it is not clear that the Eighth Circuit ruling is inconsistent with the ruling of this Court in the instant case.

"The court declared that it would grant immunity from prosecution if appellant would answer the interrogatories and it is argued that in these circumstances the appellant could not rely upon the Constitutional privilege of refusing to answer. The short answer to this contention is that the court was without authority to grant immunity from prosecution. The attempt to grant such an immunity was not within the judicial power but was an attempted exercise of executive or legislative power . . ." *Id.* at 661.

Once a finding is made by a district court that the U. S. Attorney has promised not to prosecute or that the witness has not been warned, is the grant of "judicial immunity" any more an infringement on, or an exercise of, executive or legislative power than any other suppression of evidence based upon independent fact findings premised upon Constitutional considerations? The "immunity" does not originate by virtue of the court's initiative; it follows from executive, prosecutive decisions, even mistakes. It is, technically, not "judicial" immunity.

The discussion by The National Commission on Reform of Federal Criminal Laws of immunity and its proposed legislation provides a basic analytical approach to this question.[3]

---

3. A standard immunity provision similar to that recommended by the Commission was enacted in Title II of the Organized Crime Control Act of 1970 (18 U.S.C. §§ 6001–6005).

"For an immunity statute to be seen in total perspective it should be recognized that immunity is, and can be, effectively conferred other than by a legislatively authorized method. The ways may be roughly divided into grants which are *unintentional,* being judicially imposed, and *intentional,* as a result of prosecutorial agreement.

"Unintentional immunity is frequently conferred as the result of the fact that exclusion of illegally seized evidence and the fruits thereof is the sanction for a violation by government agents of constitutional (and possibly certain procedural) rights. Under present constitutional doctrine this use restriction applies to information and leads obtained as the result of an illegal search or seizure, Weeks v. United States, 232 U.S. 383, [34 S.Ct. 341, 58 L.Ed. 652] (1914), failure to give *Miranda* warnings, Miranda v. Arizona, 384 U.S. 436, [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), or otherwise wrongfully coercing or inducing a confession, Wilson v. United States, 162 U.S. 613, [16 S.Ct. 895, 40 L.Ed. 1090] (1896), and possibly an unlawful arrest, Wong Sun v. United States, 371 U.S. 471, [83 S.Ct. 407, 9 L.Ed.2d 441] (1963)." Working Papers at 1419.

". . . The Court's intellectual confusion in Counselman, not clarified in Brown v. Walker, 161 U.S. 591, [16 S.Ct. 644, 40 L.Ed. 819] (1896), has not been a featured aspect of discussions of fifth amendment and immunity statute theory until recently. However, the new self incrimination and immunity cases of the past few years have raised fresh questions concerning the constitutional requirements for a valid immunity statute, in the light of the two overall but competing considerations of giving the witness his just due under the fifth amendment while at the same time preserving the interest in effective prosecution of law breakers. Use restriction has emerged as the central theme of the fifth amendment, analogous to the case development under the fourth amendment. Of particular importance are the Supreme Court's decisions, opinions and dicta in Murphy v. Waterfront Commission, New York Harbor, 378 U.S. 52, [84 S.Ct. 1594, 12 L.Ed.2d 678] (1964), and Gardner v. Broderick and its companion case, Uniformed Sanitation Men Association v. Commissioner of Sanitation, [392 U.S. 273], 88 S.Ct. 1913, 1917, [20 L.Ed.2d 1082] (1968).

"(a) Murphy v. Waterfront Commission.—The Murphy case, following on the heels of Malloy v. Hogan, 378 U.S. 1, [84 S.Ct. 1489, 12 L.Ed.2d 653] (1964), which had made the fifth amendment applicable to the States, held that as a consequence of the new scope of the fifth amendment the Federal government must be barred from prosecutorial use of State compelled *'testimony and its fruits'.*

"This rule is based not on State legislative power to immunize against Federal prosecution but rather on the operation of the fifth amendment itself. Such an exclusionary rule, judicially announced and based on the fifth amendment, is parallel to the judicially announced and judicially policed exclusionary rule derived from Mapp v. Ohio, 367 U.S. 643, [81 S.Ct. 1684, 6 L.Ed.2d 1081] (1961), as a sanction against fourth amendment violations. In a sense it may be called 'judicial immunity', and it is based on a use restriction concept derived directly from the Constitution. Unlike statutory immunity, there is, first, no bar to use of independent evidence; and second, no absolute bar to prosecution for a transaction which relates substantially to the improperly coerced disclosure. Thus, under recent fifth amendment jurisprudence developed in such additional cases as Garrity v. New Jersey, 385 U.S. 493, [87 S.Ct. 616, 17 L.Ed.2d 562] (1967), and Spevack v. Klein, 385 U.S. 511, [87 S.Ct. 625, 17 L.Ed.2d 574] (1967), the due process 'coerced confession' line of cases, the fourth amendment

cases, and the fifth amendment line of cases seem to coalesce in result, even though there may be underlying doctrinal differences." *Id.* at 1423–1424.

The Supreme Court, Mr. Justice Powell writing for the majority, held in Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), that 18 U.S.C. § 6002 is constitutional. The court found that the use and derivative use immunity provided by § 6002 "leaves the witness and the prosecutorial authorities in substantially the same position as if the witness had claimed the Fifth Amendment privilege." *Id.* at 462, 92 S.Ct. at 1666.

"This total prohibition on use provides a comprehensive safeguard, barring the use of compelled testimony as an 'investigatory lead,' and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures.

"A person accorded this immunity under 18 U.S.C. § 6002, and subsequently prosecuted, is not dependent for the preservation of his rights upon the integrity and good faith of the prosecuting authorities. As stated in Murphy [v. Waterfront Comm'n]:

" 'Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.' 378 U.S. [52], at 79 n. 18, 84 S.Ct. [1594, 12 L.Ed.2d 678], at 1609.

"This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

"This is very substantial protection, commensurate with that resulting from invoking the privilege itself. The privilege assures that a citizen is not compelled to incriminate himself by his own testimony. It usually operates to allow a citizen to remain silent when asked a question requiring an incriminatory answer. This statute, which operates after a witness has given incriminatory testimony, affords the same protection by assuring that the compelled testimony can in no way lead to the infliction of criminal penalties. The statute, like the Fifth Amendment, grants neither pardon nor amnesty. Both the statute and the Fifth Amendment allow the government to prosecute using evidence from legitimate independent sources.

"The statutory proscription is analogous to the Fifth Amendment requirement in cases of coerced confessions. A coerced confession, as revealing of leads as testimony given in exchange for immunity, is inadmissible in a criminal trial, but it does not bar prosecution." *Id.* at 460–461, 92 S.Ct. at 1664–1665.

The Fifth Amendment privilege protects one only when the incriminating evidence may be used against him. Where there is no danger of prosecution using that evidence or its fruits, the result is effective immunity, whether based upon statute or upon an independent finding of facts by the court which requires the legal conclusion that the evidence cannot be used.

The "Recalcitrant Witness" statute, 28 U.S.C. § 1826 reads in part:

"(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, . . ., the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the wit-

ness is willing to give such testimony or provide such information . . ."

 A witness does not have just cause in refusing to testify after a grant of immunity pursuant to 18 U.S.C. § 6002 because the Supreme Court has determined that the barring of the use and derivative use of the witness' compelled testimony affords immunity that is coextensive with the privilege against compulsory self-incrimination. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). This Court's findings of fact here in the context of applicable legal principles have an equivalent effect; hence, Mr. Kelly has no just cause for refusing to comply with this Court's order.

An incidental effect of the Court's ruling is the achievement of a balance between the rights of the accused and the public's interest in the investigation of criminal activity. To allow every witness called before a grand jury to force the government to proceed only under applicable statutory requirements would enervate the grand jury's investigative utility. In this case the grand jury had been in session for four days and had left only the matter of Sooner News Agency to complete its scheduled hearings. The U. S. Attorney had no notice of the witness' intent to rely on his Fifth Amendment privilege. And the U. S. Attorney had absolutely no intent to prosecute the witness. Hence the Court's ruling not only guaranteed to the witness his right against self-incrimination, but also increased the likelihood of the grand jury's timely completion of its scheduled investigations. Furthermore, the ruling insures that witnesses can testify without fear of surprise prosecution and that incidental but recalcitrant witnesses cannot inhibit the orderly and efficient performance of the grand jury's duty. The Court believes that the approach taken by the U. S. Attorney for the Eastern District of Arkansas is the only correct and practical one consistent with Constitutional standards. The simplicity of the rule in terms of its administration and enforce-

ment is obvious: if the U. S. Attorney is certain that the government will, under no circumstances, seek to prosecute the witness, there is no need to warn him, and he must testify since he will be protected. If the U. S. Attorney believes that there is even a remote possibility of prosecution, he must warn. Then if the witness refuses, the Justice Department can decide whether to grant him legislatively based immunity. Under this rule there is no need to psychoanalyze the attorneys for the government to determine how, precisely, they regarded the witness at the time he was called upon to testify.