UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph DE SENA et al., Defendants-
Appellants.

Nos. 396, 397 and 484, Dockets
73-2048, 73-2086 and 73-2559.

United States Court of Appeals,
Second Circuit.

Argued Nov. 9, 1973.

Decided Dec. 28, 1973.

Robert L. Ellis, Joseph P. Hoey, Gerald L. Shargel, Amen, Weisman & Butler, New York City, for appellant De Sena.

James M. La Rossa, New York City, for appellants De Gasero and Mucci.

Raymond J. Dearie, L. Kevin Sheridan, Asst. U. S. Attys., Robert A. Morse, U. S. Atty., E. D. N. Y., for appellee.

Before WATERMAN, FRIENDLY and TIMBERS, Circuit Judges.

WATERMAN, Circuit Judge:

Appellants, jointly indicted as principals in a two-count indictment charging violations of two of the federal bank robbery statutes, 18 U.S.C. §§ ·2113(a) and 2113(d), were tried together to a jury. Each was found guilty of both of the crimes charged. They have appealed these convictions, and we find their contentions to be without merit.

On September 17, 1970 there was an armed robbery at the Peninsula National Bank in Far Rockaway, New York. The robbery was carried out by three men who entered the bank, and one witness tended to establish the existence of a fourth perpetrator, a driver of a "getaway" car, who had remained outside the bank during the commission of the crime. After the three men inside the bank had taken approximately $50,000 of the federally insured deposits they successfully escaped.

The sole factual issue at trial was whether appellants were participants in the robbery. In support of its claim that they were, the Government offered the testimony of six eyewitnesses to the crime; five were bank employees and the sixth was a bank customer who happened to observe from outside the bank many of the events connected with the consummation of the crime. These witnesses had had substantial opportunities to view the robbers during the commission of the crime, and at trial the six witnesses, in varying combinations, made positive in-court identifications of each of the appellants as one of those robbers. The Government sought to bolster these in-court identifications by testimony that each witness, some eighteen months after the crime and a year before trial, had previously identified from photographs each particular appellant whom he was now identifying in court.

To controvert the Government's claim that they were the robbers, each appellant adduced alibi testimony which the jury apparently disbelieved.

Prior to trial the defense was aware that the Government believed that these three appellants were not the sole participants in the robbery. For example, the grand jury indictment had stated that the appellants and "other persons" had carried out the robbery. Moreover, the Government appears to have indicated at the arraignment of the three of them that the appellants *and* a known colleague of theirs, one James LaRuffa, had committed the crime.[1] When, immediately before the first prosecution witness was to testify, the defense moved for production of any statement taken by the Government "implicating anybody else in this bank robbery or suggesting that another person committed this bank robbery," the Assistant United States Attorney declared that the Government had obtained a statement which indicated that LaRuffa had been the driver of the getaway car. This statement which was made by someone other than LaRuffa, was furnished to the district court for an *in camera* inspection to ascertain whether it must be shown to the defense under the doctrine of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Judge Costantino determined that it was not *Brady* material and therefore refused to order that it be turned over. At the start of the second day of trial appellant De Sena's counsel indicated that the Government had apparently granted to LaRuffa (who had earlier pleaded guilty before a different judge,

---

1. At oral argument defense counsel disputed the Government's assertion that *all* the appellants were informed about LaRuffa's participation at their arraignments. The point is unimportant for it is not denied that by ·the start of the trial all appellants were aware of · the Government's conception of LaRuffa's part in the scheme to rob the bank.

Judge Weinstein, to an information which was designed to cover all pending federal charges against him, including any connected with the Peninsula National Bank robbery) immunity from any prosecution for any crime involved with the Peninsula National Bank stick-up. The Government acknowledged the promise of immunity but denied a further assertion of defense counsel that this immunity would not have been granted if the Government had not had in its possession a statement from La-Ruffa himself.

The trial then proceeded. The defense, as an act of trial strategy, chose not to call LaRuffa as a defense witness.

More than two months after the return of the jury's verdict a motion for a new trial was made by the appellants, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, on the basis of an affidavit of one of defense counsel that LaRuffa had now made a statement to this lawyer that fully exculpated appellants of any part in the bank robbery. At the hearing on the Rule 33 motion LaRuffa refused to testify about the robbery of the Peninsula National Bank, but he did categorically deny having made any statement about the case to anyone. The hearing was then adjourned, but LaRuffa, at this point relying on his constitutional rights, including his right against self-incrimination, remained adamant in his refusal to testify. Referral was made to Judge Weinstein who, as previously noted, had taken LaRuffa's plea to the information, and had accepted the Government's promise not to prosecute for the Peninsula National Bank robbery. Judge Weinstein stated that he would enforce this government promise.

Before Judge Costantino the Government reaffirmed this promise not to prosecute, although it chose not to seek a grant of formal statutory immunity. LaRuffa continued to refuse to testify. Inasmuch as LaRuffa was then under a New York State life sentence for mur-

der, which he had not yet begun to serve,[2] Judge Costantino regarded any order to compel LaRuffa to testify as being an utterly futile judicial gesture.

■ Appellants first argue that Judge Costantino's failure to order La-Ruffa to testify at the Rule 33 hearing, coupled with the refusal of the United States Attorney to seek a formal statutory grant of immunity, constitutes the suppression of evidence to which the defense was entitled. There is no merit to this contention.

■ On the facts here we need not decide whether the defense can compel the Government to seek a grant of formal statutory immunity. Both the Government and appellants agree that La-Ruffa had been granted de facto immunity from prosecution for the robbery of the Peninsula National Bank. The Government's public promise not to prosecute, reaffirmed at the Rule 33 hearing, was without doubt judicially enforceable. In re Kelly, 350 F.Supp. 1198, 1199–1200 (D.Ark.1972); see Santobello v. New York, 404 U.S. 257, 262–263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

Appellants' argument is thus reduced to an assertion that Judge Costantino's failure to compel a witness to testify, despite the fact that immunity had been granted to him, amounted to "suppression of evidence." This line of reasoning must be rejected.

We note initially that appellants could have, of course, sought to elicit exculpatory information from LaRuffa by calling him as a defense witness at trial. The fact that the defense deliberately chose to avoid this expeditious and reasonable procedure permits the inference that the defense believed that LaRuffa's testimony would not have been helpful. In retrospect the defendants can, of course, say it would have been futile to call LaRuffa because he would have refused to testify and the district judge would not have compelled him to do so; but such hindsight cannot bring the mo-

---

2. LaRuffa was at the time of the hearing serving a federal prison sentence.

tion for a new trial within the minimum requirements of Rule 33 that a motion not made within seven days after verdict rest on "newly discovered evidence."

The district court was confronted here with an obdurate witness whose reasons for refusing to testify were not limited to his personal right against self-incrimination. LaRuffa, in informing the judge that he would not under any circumstances testify concerning the bank robbery, indicated that he would not testify "for the reason that [he] just will not testify." As mentioned above, LaRuffa was then under a New York State life prison sentence for murder, a sentence which he had not begun to serve,[3] and it is obvious that Judge Costantino was helpless in the face of the witness's obstinacy. To order LaRuffa to testify under threat of a six-months' sentence for contempt of court would have been a pointless gesture. We do not have the slightest doubt that if the judge had so ordered the order would have been totally ineffectual. To contend that the district court's inaction constituted "suppression of evidence" is to strain logic to the breaking point.

Appellants next urge us to direct the district court to hold a hearing to determine whether the Government "lost, destroyed or suppressed" exculpatory evidence. This request is based principally upon appellants' contention that LaRuffa's plea of guilty to the information pleaded to before Judge Weinstein would not have been accepted by that judge as "covering" among other things the robbery here at issue without "substantial evidence that [LaRuffa] participated in the Peninsula robbery."

■ The Government has asserted that the only applicable document in its possession is a statement by a third party, not LaRuffa, which implicates LaRuffa *and* appellants in the Peninsula National Bank robbery. We have examined this document, which was also examined by the district court, to ascertain whether it contained exculpatory *Brady* material. We find that the Government's description of the statement is accurate,[4] and we also find that the content of the document is of sufficient specificity to support acceptance of LaRuffa's plea. We thus reject appellants' contention that the circumstances surrounding LaRuffa's guilty plea create the inference that documents other than the third party's statement exist.

Inasmuch as no reason has been presented which would justify our ordering a hearing to determine whether other documents exist, we are compelled to rule against the appellants.

■ Finally, appellants seek a new trial on the basis of the allegedly erroneous introduction into evidence at trial of the testimony of the witnesses who made the in-court identifications that they had made prior photographic identifications. This circuit appears to allow such corroboration of in-court identifications, United States v. Forzano, 190 F.2d 687, 689 (2 Cir. 1951); see United States v. Sacasas, 381 F.2d 451, 454 (2 Cir. 1967); and we choose not to disturb this position.

■ Although appellants in their brief do not dwell upon it, we should address ourselves to a further point. Some of the photographs from which the witnesses made the prior identifications appear in the familiar double-shot juxtaposed format associated with "mug shots." These photographs were intro-

---

3. See note 2, supra.

4. Appellants argue that this document was exculpatory. They speculate that the statement which describes LaRuffa's part in the crime is inconsistent with the other evidence in the case which appellants claim discloses that there were only three perpetrators. This analysis of the evidence is inaccurate, however. The bank customer who witnessed the crime from outside the bank trailed the three fleeing robbers to the getaway car, and he testified that two of the robbers got into the back seat through doors that were already open while the third entered the front seat through the open door on the passenger's side. This testimony is entirely compatible with the substance of the statement in the Government's possession given by the undisclosed third party.

duced into evidence following the direct testimony of these prior photographic identifications. Inasmuch as the jury may infer from the nature of this type of photograph that a defendant has had problems with the law prior to his most recent arrest, the introduction of this sort of picture may *in certain circumstances* undermine the defendant's right to a fair trial. Unquestionably such was not the case here. We have examined these photographs. They have no visible markings that would indicate any prior convictions. The bottoms of the pictures have been taped with adhesive material, upon which is the legend "evidence," so that no one could determine whether any incriminating inscriptions or numbers appeared below the photographs under the tape. Presumably this taping was performed outside the jury's view as it should have been. Moreover, the introduction of these pictures was not performed in a manner that would lead the jury to infer that there was something highly damaging or suspicious about the pictures themselves. Though it is certainly not the fact shown here we could well assume, *arguendo*, that error was committed by the Government while introducing the pictures into evidence, and, despite that, we would still deny appellants a new trial because of the infinitesimal possibility in view of the overwhelming evidence against appellants that their rights were prejudiced by such an imagined error.

Affirmed.

FRIENDLY, Circuit Judge (concurring):

I join fully in Judge Waterman's opinion except that, for reasons stated in my dissent in United States v. Harrington, 490 F.2d 487, I could not agree with the suggestion, if such there be, that taping of police photographs in the jury's presence would, without more, require a reversal. The better practice, of course, is to conduct any taping or cutting outside the view of the jury, but emergencies may arise in which prosecutors and trial judges may fail to achieve this. In such instance a conviction should be reversed only after a careful weighing of all relevant factors.

Of less importance, I see no occasion for the conjectural final sentence of the opinion.