Andrea SURINA, Appellant,

v.

The Honorable S. J. BUCKALEW, Judge
of the Superior Court and State of
Alaska, Appellee.

STATE of Alaska ex rel. SUPPLEMEN-
TAL GRAND JURY FOR MAY
1980, Petitioner,

v.

The Honorable Allen T. COMPTON, Judge
of the Superior Court for the State of
Alaska, First Judicial District, Respon-
dent.

John Doe, Real Party in Interest.

Nos. 5205, 5462.

Supreme Court of Alaska.

Jan. 2, 1981.

As Amended April 6, 1981.

William L. Choquette, Artus & Choquette, Anchorage, for appellant. Robert C. Bundy, Asst. Dist. Atty., Larry Weeks, Dist. Atty., Anchorage, for appellee, in No. 5205.

Timothy J. Petumenos, Asst. Atty. Gen., Anchorage, Daniel Hickey, Chief Prosecutor, Wilson L. Condon, Atty. Gen., Juneau, for petitioner, in No. 5462.

Before RABINOWITZ, C. J., and CONNOR, BURKE and MATTHEWS, JJ., and COOKE, Superior Court Judge.

## OPINION

RABINOWITZ, Chief Justice.

The issue presented by these proceedings is whether, in the absence of any authorizing statute on the subject, a promise of immunity by a state prosecutor and court may be used to compel testimony from a witness in a criminal proceeding, despite the witness's claim of the privilege against self-incrimination. We conclude that under proper circumstances, the testimony so immunized may be compelled.

In regard to the Surina appeal, one Rick Greenwell was charged with the robbery of a gas station, allegedly committed with an unidentified black individual on October 14, 1979. In the course of the police investigation, it was learned that appellant Andrea Surina, an employee of a bar across the street from the gas station, could place Greenwell in the immediate vicinity of the robbery in the company of a black individual at the time of the robbery, and that she had seen in Greenwell's possession a firearm matching the description of that used in the robbery.

At the preliminary hearing in Greenwell's prosecution, Surina appeared as a witness for the state. After responding to several preliminary questions, Surina refused to answer, on the grounds of her privilege against self-incrimination,[1] the question, "Did you have occasion to discuss the subject of guns or weapons of any kind with [Greenwell and his companion]?"

The state then moved the superior court for an order compelling appellant's testimony. The state submitted an affidavit from the state district attorney to the effect that the state was granting appellant use and derivative use immunity from her testimony, and transactional immunity as to the robbery.[2] The state also submitted a letter from the United States Attorney for Alaska, binding the federal government to a grant of use and derivative use immunity for appellant's testimony. Additionally, the state agreed to file various complaints and motions to dismiss those complaints with prejudice, in order to further protect Surina.

A hearing was held on this motion at which appellant was called to the witness stand. Again, the preliminary questions posed by the prosecutor were answered; but again, this time on cross-examination, appellant refused to answer defense counsel's inquiries on various matters pertaining to her conversations with Greenwell concerning the gun. The superior court found that the immunity offered was sufficient to protect appellant, and ordered her to answer the questions. Although appellant obeyed the court's order to answer a few of defense counsel's questions, appellant's attorney finally prevailed upon her to absolutely refuse to answer the question, "Did you ever possess [the gun allegedly used by Greenwell in the robbery] before?"

The superior court held appellant in contempt and ordered her incarcerated until such time as she agreed to testify, setting bond in the amount of $1,000. An Emergency Stay was granted by a justice of this court and the case thereafter came up to this court on a petition for review.

The procedural history of the second case, *State of Alaska v. Compton*, is somewhat different, although the same basic issue is posed. This case is an original application for relief under former Appellate Rule 25(f), involving an application to compel testimony of a witness (John Doe) in connection with a grand jury investigation. The superior court denied the application.

A subpoena to testify before a grand jury was served on the real party in interest. The prosecutor formally notified Doe's attorney that Doe was a target of the grand jury investigation, and proposed a consensual immunity agreement under which Doe would be given use and derivative use immunity for the testimony given. The prosecutor also indicated that, if Doe did not agree, the prosecution would seek an order

---

1. United States Const. amend. V; Alaska Const. art. I, § 9. Initially, Ms. Surina refused to answer because of concerns over her job and her relationship with her co-worker, defendant Greenwell's fiance. After the superior court, at defense counsel's request, informed her of her privilege against self-incrimination, she refused to testify on that ground.

2. Use and derivative use immunity prohibits only the use of the compelled testimony and its fruits against the defendant; thus, the witness may still be prosecuted for crimes referred to in the compelled testimony, as long as the subsequent prosecution is based entirely on independently obtained evidence. Transactional immunity absolutely precludes prosecution of a witness for such crimes, as long as the testimony is in response to a question rather than unsolicited but intentionally given in an effort to frustrate and prevent prosecution.

compelling testimony based on a grant of use and derivative use immunity. Doe's attorney was made aware of the pending *Surina v. Buckalew* case and given copies of the pleadings.

Thereafter, Doe's attorney informed the prosecutor that Doe intended to rely upon his privilege. On the same day, the foreman of the grand jury requested the Attorney General to confer upon Doe a "grant of immunity sufficient to protect his privilege against self-incrimination." The Attorney General then signed an affidavit granting Doe use and derivative use immunity for responsive testimony given to the grand jury. This was included in a letter from the prosecutor to Doe's attorney advising him of the grant, and also of the state's intention to obtain an order compelling Doe's testimony and, in the event of noncompliance with the order, an order of civil contempt. The prosecutor also filed an application to compel testimony and a memorandum in support thereof. The superior court thereafter filed an order and opinion denying the state's application to compel testimony. It was from this order that the state filed its original application for relief to this court. The case was then consolidated with the *Surina v. Buckalew* case.

I. Appealability.

Although neither party addresses the issue of the appealability or finality of the superior court's contempt citation in *Surina v. Buckalew*, we think this an issue which must be addressed in light of some confusion possibly caused by our prior cases.[3]

In accordance with our interpretation of federal law on the subject,[4] we have decided that where a *party* refuses to abide by court orders issued in connection with pending litigation, civil contempt orders against that party will be subject only to discretionary review on our part (i. e., by a petition for review). All criminal contempt sanctions, whether against a party or a non-party, and a contempt citation of either kind (civil or criminal) against a non-party, will be deemed appealable orders.

We think this policy will best ensure that the course of litigation is not impeded by a party's tangential objections, while still protecting the legitimate rights of all concerned. Our discretionary review power remains available where there is good reason for departing from the general rule. Since *Surina v. Buckalew* involves a non-party, the proper form of review is by appeal. Although filed as a petition for review, we will treat the case as an appeal and reach the merits.[5]

As to the *Compton* case, we agree with the state's position that in view of the fact that there is no formal proceeding in the trial court against the witness John Doe, the real party in interest, a petition for review pursuant to former Alaska R. App. P. 23 and 24 is inappropriate. Further, the type of relief requested is that formerly categorized under the writ of mandamus. As such, the proper procedure to obtain our discretionary review is, under former Alaska R. App. P. 25 (now Alaska R.

---

3. Generally, we have heard contempt cases as appeals, but one case similar to this one was heard as a petition for review. *See E. L. L. v. State*, 572 P.2d 786 (Alaska 1977).

4. It is well established that as to a party to a suit a civil contempt order is interlocutory and reviewable only upon appeal taken from a final judgment or decree. Although an adjudication of civil contempt is final and appealable as to a non-party who would be unable to appeal from the final decision on the merits, a civil contempt order issued against a party lacks the requisite finality because its validity can be tested by an appeal from the final judgment. On the other hand, an adjudication of criminal contempt is a final judgment and the con-

temnor, whether a party or non-party, may obtain immediate review by appeal.

*Southern Ry. Co. v. Lanham*, 403 F.2d 119, 124 (5th Cir. 1968) (citations omitted); *see also* 9 Moore's Federal Practice § 110.13[4] (1980). Under Alaska's rules of procedure, the interlocutory civil contempt order against a party would be subject to a discretionary review on a petition for review. *See* Alaska R. App. P. 402, 403.

5. This court has the discretionary power to treat a matter filed as a petition for review as an appeal. *See Jordan v. Reed*, 544 P.2d 75 (Alaska 1975); *In Re E. M. D.*, 490 P.2d 658 (Alaska 1971).

App. P. 404), an original application for relief.

## II. The Merits: Inherent Authority.

We begin by noting aspects of these cases which are not at issue here.[6] It is uncontested that, were the subject offers of immunity authorized by and made pursuant to statute, they would be constitutionally sufficient to compel testimony despite a Fifth Amendment claim.[7] It is also uncontested that there is no Alaska statutory provision authorizing such promises of immunity. Thus, we deal here not with a constitutional question, nor with one of statutory interpretation. Rather, it is our task to explicate the common law which we will apply in these situations unless and until the Alaska legislature acts to modify it.[8]

■ Initially, we note that we have recently emphasized the wide discretion afforded to prosecutors under our system in making the critical decision whether to institute criminal proceedings in a particular case. *Burke v. State*, 624 P.2d 1240, 1246 (Alaska 1980).[9] This same observation applies, of course, to a decision not to bring action in a particular case. Also, we note that the ability of prosecutors to offer immunity in exchange for testimony has generally been regarded as a necessary and beneficial aspect of our criminal justice system. Those courts which have prohibited non-statutorily authorized grants of immunity have lamented the fact that their conclusion greatly hobbles the criminal justice system:

> Situations such as that with which the prosecution is faced in cases like the present demonstrate the crying need of appropriate enabling legislation, either in and of itself affording the immunity in question as to prosecution for all crimes in which his testimony tends to incriminate him; or, perhaps better still, authorizing the district attorney and the court, under proper safeguards, to extend immunity whenever the proper administration of the criminal law demands it.

*Apodaca v. Viramontes*, 53 N.M. 513, 212 P.2d 425, 430 (1949). Commentators have also emphasized the salutary effect of allowing prosecutors to exchange immunity for testimony:

> As indicated, the main reason for refusing enforcement of non-statutory promises of immunity is the judicial fear that the government's right and duty to prosecute would be bargained away. But this attitude seems to be outmoded and out of touch with practical realities. First, the wide use of statutory immunities shows the acceptance of this device as a proper means of law enforcement. Insofar as the government's right to prosecute is concerned, it is of no consequence whether the immunity was effected through statutory means or through an informal procedure since the same result would follow. In failing to enforce the non-statutory promises of immunity, the courts should not hide behind the statement that the prosecutor has no inherent power to grant immunity and therefore the agreements are not binding. The proper procedure is to adopt administrative controls in the prosecutor's office which would prevent unauthorized actions rather than ride roughshod over the

---

**6.** No reply from the real party in interest in the *Compton* action has been filed in this court. Under former Alaska R. App. P. 25(a)(4), seven days after service of the petition were allowed to file a memorandum in opposition. Not having received any such opposition memoranda, we assume that the real party in interest in the *Compton* case intended to rely upon the arguments made by petitioner in the *Surina* case.

**7.** *See Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

**8.** AS 01.10.010 reads:

*Applicability of common law.* So much of the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States or with any law passed by the legislature of the State of Alaska is the rule of decision in this state.

**9.** *See also State v. Carlson*, 555 P.2d 269, 271–72 (Alaska 1976) (court may not bar Attorney General from prosecuting by accepting plea to lesser charge over prosecutor's objection); *Public Defender Agency v. Superior Court*, 534 P.2d 947, 950–51 (Alaska 1975) (court may not direct Attorney General to prosecute).

defendant's rights in an attempt to avoid the abuse of prosecutorial discretion. Comment, *Judicial Supervision of Non-Statutory Immunity,* 65 J.Crim.L. & Criminology 334, 344 (1974).

Surina cites us to many cases which support the position that, in the absence of statutory authorization, any prosecutorial grant of immunity is invalid and cannot be made the basis of compelling her testimony. The state argues that modern notions of due process would bind the prosecution to its immunity promises made in return for the surrender of the privilege against self-incrimination, and that if the immunity is constitutionally sufficient, there is no reason why the testimony should not be compelled. The state also emphasizes that the issue arose in the context of cross-examination, and thus the defendant's Sixth Amendment rights to confrontation are also implicated.[10]

There is a considerable amount of authority supporting appellant's argument. However, for several reasons, we find the underlying logic of these authorities inapplicable here. Many of the cases cited are simply not on point. For example, several, although they back appellant's position in dicta, arose in the context of a defendant objecting to the prosecutor's deal with a prosecution witness. Although noting that the promise may have been unauthorized by statute, the actual holding of these cases was that the privilege against self-incrimination is personal to the witness and cannot be claimed by the defendant.[11]

A close reading of the case law that is on point reveals five arguments which are cited in support of the majority rule. We will consider each point separately.

The first point emphasized in most of the case law, and all of the commentary, is the "great weight of authority" on appellant's side.[12] Initially, we note that the authority is not as uniform as the commentators would have it.[13] Secondarily, for the reasons outlined below, we regard the authority as based upon premises which are no longer valid, or are inapplicable under Alaskan procedure. Although we do not regard the weight of authority lightly, we conclude that it does not compel a decision in accordance with it here.

The second point, the most compelling argument, is that the prosecution cannot guarantee that its part of the bargain will be kept (i. e., that the immunity will be efficacious), and therefore to mandate a waiver of constitutional right in return for such a slim promise is unconscionable. This is well-expressed in several leading cases, one being *Apodaca v. Viramontes,* 212 P.2d at 429 (N.M.1949), *quoting Temple v. Commonwealth,* 75 Va. 892 (1881):

> No implied suggestion by the court, nor any implied or positive promise by the commonwealth's attorney, could operate as an indemnity to the witness that he would not be further prosecuted. He had a right to stand upon his constitutional

---

**10.** For purposes of this decision, we regard the Sixth Amendment right to confrontation issue as irrelevant. This right belongs to the defendant, who is not a party to this appeal.

**11.** The following cases cited by appellant Surina fall into this category: *State v. Roberts,* 4 Conn.Cir. 271, 230 A.2d 239 (Conn.Cir.1967); *State v. Reed,* 127 Vt. 532, 253 A.2d 227 (1969); *State v. Crepeault,* 126 Vt. 338, 229 A.2d 245, *cert. denied,* 389 U.S. 915, 88 S.Ct. 249, 19 L.Ed.2d 267 (1967); *State v. Johnson,* 462 P.2d 933 (Wash.1969).

Other cases cited by appellant hinged on the issue as to whether a grant of use immunity alone could suffice to replace the privilege against self-incrimination, to which the courts have responded that the potential of derivative use of the testimony presents enough of a dan-

ger to justify continued application of the privilege. *See, e. g., Counselman v. Hitchcock,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892); *Karel v. Conlan,* 155 Wis. 221, 144 N.W. 266 (1913), *overruled on other grounds,* 170 Wis. 492, 175 N.W. 777 (1920). We have no quarrel with this principle.

**12.** *See, e. g., Apodaca v. Viramontes,* 53 N.M. 513, 212 P.2d 425, 427 (1949); *Ex Parte Werner,* 46 R.I. 1, 124 A. 195, 198 (1924).

**13.** *In Re Kelly,* 350 F.Supp. 1198, 1200 (E.D. Ark.1972); *Ex Parte Copeland,* 91 Tex.Cr.R. 549, 240 S.W. 314, 317–18 (1922). Both of these cases involved compelled testimony based upon a non-statutorily authorized grant of immunity.

privilege, and not to trust to the chances of a further prosecution. The court, of course, could offer him no such indemnity. Nor could the commonwealth's attorney, for he might die, or be removed, or resign, and his successor might see fit to institute a prosecution against him.

And in *Doyle v. Hofstader*, 257 N.Y. 244, 177 N.E. 489, 497 (1931), then Chief Judge Cardozo of the New York Court of Appeals said:

> The witness is within his privilege in insisting that the basis for his immunity shall be something more substantial than the grace or favor of the prosecutor who may bring him to the bar of justice . . . . To uphold a finding that his conduct amounted to a contempt it must appear that in refusing to answer he was violating a legal, and not merely a moral obligation. The immunity like the obligation must have its source and sanction in the law.

■ Compelling as this logic was when its premise was valid, we believe that removal of its basic assumption reverses the result. For we are of the view that, as a matter of both federal and state due process, a prosecutor's promise of immunity made in return for a surrender of the privilege against self-incrimination is binding on the prosecution.

Earlier cases held that unauthorized promises on the part of prosecutors would give rise, not to an absolute right of entitlement on the part of the defendant, but only to an "equitable right" which could be taken into account at sentencing. Sometimes this was expressed in terms of leniency in the sentence itself, and sometimes merely in a stay of the sentence during which the defendant could apply for executive clemency. Either way, its fulfillment was clearly discretionary on the part of the authorities, even though the individual had complied fully with his part of the bargain. The leading case on point was *United States v. Ford*, 99 U.S. 594, 25 L.Ed. 399 (1879), which adopted this view based on an extensive review of English law on the subject.

Modern notions of due process have belied the notion that a prosecutor may invoke his discretion to evade promises made to a defendant or potential defendant as part of an agreement or bargain. In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the United States Supreme Court dealt with this issue in the context of plea bargaining. In that case, the prosecution promised to make no sentence recommendation, in exchange for the defendant's guilty plea; but the prosecutor inadvertently breached this agreement at sentencing. The Supreme Court held that the prosecutor's reneging on his part of the plea bargain agreement required either that the defendant be given an opportunity to withdraw his plea (and thus recover his right to trial), or that specific performance of the promise be mandated. *Id.* at 263, 92 S.Ct. at 499, 30 L.Ed.2d at 433.

■ We think that this logic applies with equal force to the privilege against self-incrimination. If a prosecutorial promise of immunity is made, it cannot be breached without allowing the promisee an opportunity to reconsider and revoke his part of the bargain.[14]

The case law appears to support this notion. In *In Re Kelly*, 350 F.Supp. 1198 (E.D.Ark.1972), the court justified its own contempt citation for the defendant's re-

---

14. We think that the alternative remedies of "rescission" and "specific performance" will collapse into one, in most cases. Specific performance is likely to amount to a grant of the immunity promised. Rescission should have the effect of placing the individual in the same position he would have been in had he not engaged in the agreement—i. e., the position of not having made the self-incriminating statement. The only practicable way of achieving this result is by mandating use and derivative use immunity, which the United States Supreme Court has noted, "leaves the witness and the [prosecution] in substantially the same position as if the witness had claimed his privilege in the absence of a . . . grant of immunity," *Murphy v. Waterfront Comm'n of New York*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1610, 12 L.Ed.2d 678, 695 (1964).

fusing to testify, after a non-statutorily authorized promise of immunity by the United States Attorney, using the following reasoning:

> [W]here the government has informed a witness and the court that such witness will not be prosecuted on the basis of any testimony given before the grand jury, neither that testimony nor the fruits of that testimony may subsequently be used against him. He receives in effect use immunity from prosecution.
>
> . . . .
>
> Upon a finding by the court that this promise has been made by a U.S. Attorney, the witness is in no danger of prosecution as the result of his compelled testimony and he has in effect been immunized. This immunity derives from inherent prosecutorial discretion as exercised daily. No court could permit the U.S. Attorney or the Justice Department to renege on such a promise even if not specifically authorized by act of congress or supervisors in the Justice Department without running afoul of constitutional principles. [footnotes omitted]

350 F.Supp. at 1199–1200.

Several Circuit courts have also recognized that non-statutorily authorized prosecutorial promises of immunity must, under the Constitution, be given effect as binding the prosecution.[15]

Even if this principle should eventually prove not to be the rule under federal law, we hold it to be the rule as a matter of due process under the Alaska Constitution art. I, § 7. That being the case, a defendant or witness does have more to rely upon than merely the "grace o: favor" of the prosecutor; our courts stand ready to recognize and give effect to a prosecutorial promise of immunity made part of an agreement where proven, whether authorized by statute or not, and to allow the defendant some redress for prosecutorial reneging. As such, the logic of the argument made in *Temple, Apodaca,* and *Doyle* is stripped of its force, and does not persuade us to follow those cases.

It requires a further step beyond holding that a prosecutor will be bound by his immunity promises, whether statutorily authorized or not, when voluntarily accepted by a witness as part of a bargain; we must further consider whether such binding effect justifies the use of such a promise to compel self-incriminating testimony.

■ The privilege against self-incrimination is concerned with the danger to a witness forced to give testimony leading to the inflicting of "penalties affixed to the criminal acts." *Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212, 222 (1972); *Ullmann v. United States,* 350 U.S. 422, 438–39, 76 S.Ct. 497, 506–07, 100 L.Ed. 511, 524–25 (1956); *Boyd v. United States,* 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746, 752 (1886). A wit-

---

**15.** *In Re Daley,* 549 F.2d 469, 480 (7th Cir. 1977), *cert. denied,* 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977) ("Viewing the immunity grant in its proper perspective as a powerful executive implement, it must be recognized that prosecutorial agreement may effectively function, extra-statute, to confer immunity other than through a legislatively-authorized method."); *United States v. DeSena,* 490 F.2d 692, 694 (2d Cir. 1973) ("On the facts here we need not decide whether the defense can compel the Government to seek a grant of formal statutory immunity. Both the Government and appellants agree that LaRuffa had been granted de facto immunity from prosecution for the robbery of the Peninsula National Bank. The Government's public promise not to prosecute, reaffirmed at the Rule 33 hearing, was without doubt judicially enforceable."); *United States v. Carter,* 454 F.2d 426, 427–28 (4th Cir. 1972),

*cert. denied,* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974) ("We recognize also with respect to the claim of immunity from further prosecution that ordinarily immunity in the federal system may be granted only with the approval of the court pursuant to express statutory authorization .... Nonetheless, we conclude that if the promise was made to defendant as alleged and defendant relied upon it in incriminating himself and others, the government should be held to abide by its terms."). *See also United States v. Minnesota Min. & Mfg. Co.,* 551 F.2d 1106 (8th Cir. 1977); *United States v. Paiva,* 294 F.Supp. 742 (D.D.C.1969); *People v. Brunner,* 32 Cal.App.3d 908, 108 Cal. Rptr. 501 (1973); *State v. Hingle,* 242 La. 844, 139 So.2d 205 (1961); *State v. Ashby,* 43 N.J. 273, 204 A.2d 1 (1964); *Austin v. State,* 49 Wis.2d 727, 183 N.W.2d 56 (1971).

ness may not refuse to testify upon a claim of Fifth Amendment privilege where there is "no real or substantial hazard of incrimination," *E. L. L. v. State*, 572 P.2d 786, 788 (Alaska 1977).

■ It follows that where the hazard of incrimination has been removed, the privilege against self-incrimination is no longer required.[16] It is undisputed that the promises made here met constitutional standards, under which testimony could be constitutionally compelled. *See Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

The third point is a collateral argument which should be noted. The oft-cited and well-reasoned case of *Doyle v. Hofstader*, 177 N.E. 489 (N.Y.1931), held invalid a joint legislative resolution purporting to grant immunity for testimony before a legislative committee. The legislature was seeking to grant immunity based on its legislative power, and the opinion notes that the legislative power was not vested solely in the legislature, but rather was held jointly between the legislature and the executive. As such, the legislature could not immunize

witnesses under its legislative power without exercising that power properly, i. e., with the approval of the Governor (in effect passing a statute).

Again, the scheme we are contemplating here is different. The prosecutorial decision to initiate proceedings is not shared with another branch of government; it is within the prosecutor's sole discretion. Since the prosecutor, unlike the legislature in *Doyle*, may decide on his own that a particular individual is not to be prosecuted,[17] we need not take issue with the reasoning of Chief Judge Cardozo.

A fourth factor which distinguishes this case from many of those cited to us by petitioner is the fact that our state has no statute governing discretionary immunity in court proceedings, whereas many of the statutory schemes under consideration in those cases contained provisions for limited grants—*i. e.*, only in certain circumstances.[18] There is a much stronger argument for a finding of legislative intent to prohibit unauthorized immunity agreements when the legislature has enacted a specific list of situations in which discretionary immunity

---

16. *Cf. Ex Parte Copeland*, 240 S.W. 314, 318 (Tex.Crim.App.1922):

> The purpose of immunity is to protect the accused in his constitutional privilege against subjecting himself to prosecution resulting from his own disclosures, and at the same time secure for the state the benefit of such testimony. 28 Ruling Case Law, § 27, p. 440. That the completeness of this protection removes the privilege of silence is exemplified in the declaration of Presiding Judge Davidson, of this court, in writing the opinion in the case of *Griffin v. State*, 43 Tex.Cr.R. 428, 66 S.W. 782, referring to a statute, wherein he said:
>
> He cannot plead that rule of evidence which does not permit a witness to incriminate himself, because when he testifies he is exonerated from punishment, and the incriminating testimony can never be used against him.
>
> This was said in a case where a statute was under consideration, but a like declaration is found in the case of *Camron v. State*, 32 Tex.Cr.R. 180, 22 S.W. 682, 40 Am.St.Rep. 763, with reference to an immunity extended by a court. In either case, the immunity being complete, the reason for silence contemplated by the Constitution fails. The wit-

ness being fully protected, danger from disclosure no longer exists.

Two cases have been located indicating that nonstatutorily authorized promises of immunity, although binding on the prosecution, cannot be used as a basis for compelling testimony. *People v. Rockola*, 339 Ill. 474, 171 N.E. 559 (1930); *Grand Jurors for Middlesex County for Year 1974 v. Wallace*, 369 Mass. 876, 343 N.E.2d 844 (1976). We find these distinguishable on other grounds. *See* note 18 *infra*.

17. Implicit in our ruling is the conclusion that, if a grand jury seeks, under AS 12.40.070, to compel a prosecutor to override a prior immunity grant, any resulting indictment is to be dismissed with prejudice.

18. In the following cases, the "inherent authority" argument was rejected in states which had enacted statutes listing specific situations in which immunity grants could be made to compel testimony: *State ex rel. Benemovsky v. Sullivan*, 37 So.2d 907 (Fla.1948) (en banc); *People v. Rockola*, 171 N.E. 559 (Ill.1930); *State v. Brown*, 321 A.2d 478 (Me.1974); *Bowie v. State*, 14 Md.App. 567, 287 A.2d 782 (Md. App.1972); *Grand Jurors for Middlesex County for Year 1974 v. Wallace*, 343 N.E.2d 844 (Mass.1976).

in court proceedings can be granted. This is an application of the well-known rule of statutory construction, *expressio unius est exclusio alterius*.[19] It was articulated well in the case of *Grand Jurors for Middlesex County for Year 1974 v. Wallace*, 343 N.E.2d 844, 846 (Mass.1976):

> It is clear that a witness called to testify before a grand jury may be granted immunity from prosecution only in the manner prescribed by statute. General Laws c. 233, §§ 20C–20I, were enacted in 1970 and provide that immunity may be conferred on a witness before a grand jury only by order of a Justice of the Supreme Judicial Court. We agree with the reasoning of the Superior Court judge here where he said, 'I rule the statutory plan preempts the subject and leaves no residual authority in the several district attorneys or in the Superior Court to grant immunity from prosecution.'

> It is true that it is nowhere expressly provided in the statutory scheme that immunity may be granted only in the manner shown therein. Also, the statutes provide that immunity may be granted thereunder only in proceedings or investigations concerned with certain specified crimes. G.L. c. 233, § 20D. From these provisions, the plaintiffs argue that power presently remains in the prosecutory to grant immunity as to crimes not enumerated in the statute. We do not agree. The broad and inclusive list of offenses in the statute demonstrates the legislative intent that, as to crimes not specified, no immunity shall be granted. [footnotes omitted]

In Alaska, no statute governing discretionary grants of immunity in court proceedings has been passed.[20] Thus, we have no indication that the legislature intended to label certain situations as "unauthorized." No legislative preemption has occurred. Not having expressed its approval of discretionary immunity promises only in certain trials, there is no presumption that the legislature intended to exclude others.

Finally, the cases rely upon a policy argument: "Whether the good to be attained by procuring the testimony of criminals is greater or less than the evil to be wrought by exempting them forever from prosecution for their crimes is a question of high policy as to which the lawmaking department of the government is entitled to be heard." *Doyle v. Hofstader*, 177 N.E. 489, 495 (N.Y.1931).

We think that there is merit in the position that the decision here should be a legislative one. As did the court in *Apodaca v. Viramontes*, 212 P.2d 425 (N.M.1949), we emphasize the "crying need" for appropriate legislation. However, it is our task to explicate the state of the common law in the absence of legislative action. Thus, our decision in these cases does not foreclose legislative action.

A "general immunity" approach such as the one we adopt here is not without its supporters, as against the piecemeal approach found in many legislative enactments:

> Mr. Wigmore in Volume 8 of his 3rd Edition on Evidence, page 529, § 2284, favors a general statute of immunity as against the practice in many states of enacting numerous statutes applicable only to prosecutions for particular crimes. After referring to the practice mentioned, he states:

> > But, a more extensive and effective improvement would be to authorize the

---

**19.** *See* 2A C. Sands, Sutherland Statutory Construction § 47.23 at 123–27 (4th ed. 1973).

**20.** The parties note that the legislature has considered proposals for immunity statutes, but failed so far to enact any legislation. Appellant argues that this is indicative of a legislative intent not to approve of such immunity grants. The state responds that an equally reasonable interpretation is that the legislature assumed the prosecutor had sufficient authority to make such promises without any enabling legislation. We regard the evidence on this point as too nebulous and tenuously connected to support an inference either way.

Additionally, we draw no inferences concerning immunity in court proceedings from statutes dealing with witness immunity in legislative proceedings (*e. g.*, AS 24.25.070) or administrative proceedings (*e. g.*, AS 23.20.075, 06.-05.020).

grant of immunity in all crimes without exception, by a single statutory section. This has already been done in Canada. Such a measure should leave to the judge's discretion, in each instance, to determine whether the immunity should be granted. With such flexibility the expedient of immunity grants would reach its maximum utility . . . .

*Apodaca v. Viramontes*, 212 P.2d 425, 430 (N.M.1949).

Our overall conclusion, after considering the points raised by relevant decisional law, is that the lack of statutory authorization for promises of immunity does not compel the conclusion that they are invalid and cannot support the compulsion of testimony. Further, we think there are sound policy reasons which have persuaded us that such practices should be allowed even in the absence of statutory authorization. As a matter of interpretation of state law, we hold that the prosecutors in the instant case had the inherent authority, even in the absence of enabling legislation, to grant immunity and to use that grant to compel testimony which would otherwise be protected by the privilege against self-incrimination.

### III. Structuring the Inherent Authority.

It remains to determine the scope of the immunity grant which must be made to the witness and the procedures by which this inherent prosecutorial authority must be exercised in order to be valid.

Generally, we are of the view that Rule 732 of the Uniform Rules of Criminal Procedure provides appropriate guidance concerning the exercise of this authority. This rule provides:

(a) *Compelling production of information despite assertion of privilege.* In any proceeding under these Rules, if a witness refuses to answer or produce information on the basis of his privilege against self-incrimination, the [district] court, unless it finds that to do so would not further the administration of justice, shall compel him to answer or produce information if:

(1) The prosecuting attorney makes a written request to the [district] court to order the witness to answer or produce information, notwithstanding his claim of privilege; and

(2) The [district] court informs the witness that by so doing he will receive immunity under subdivision (b).

(b) *Nature and scope of immunity.* If, but for this Rule, the witness would have been privileged to withhold the answer or information given, and he complies with an order under subdivision (a) compelling him to answer or produce information, he may not be prosecuted or subjected to criminal penalty in the courts of this State for or on account of any transaction or matter concerning which, in compliance with the order, he gave answer or produced information.

(c) *Exception for perjury and contempt.* A witness granted immunity under this Rule may nevertheless be subjected to criminal penalty for any perjury, false swearing, or contempt committed in answering, failing to answer, or failing to produce information in compliance with the order.[21]

Surina does not contest the superior court's conclusion that the scope of immunity granted was sufficient to justify the superior court's order compelling her testimony. Appellant had a written guarantee of transactional immunity from the state, and a written guarantee of use and derivative use immunity from the federal prosecutor. Additionally, under the United States

---

**21.** We have referred this rule to the standing Advisory Committee on Criminal Rules for study and recommendation. In the interim, we think this rule should be used as a guide for grants of immunity. However, we do not mean to endorse the provisions of subsection (b) of the Rule, specifying that transactional immunity is required. As noted in the text, we are not presented with this problem here. Until the issue is decided, the prosecution may make its position unassailable by complying with subsection (b), but we do not hold that it must do so.

Supreme Court's ruling in *Murphy v. Waterfront Commission of New York*, 378 U.S. 52, 77–78, 84 S.Ct. 1594, 1608–09, 12 L.Ed.2d 678, 694 (1964), the state grant would automatically bind the federal government to use and derivative use immunity. Thus, Surina was doubly guaranteed use and derivative use immunity on the federal level.

This grant exceeded the constitutional minimum mandated by *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1163, 32 L.Ed.2d 212 (1972), which only requires use and derivative use immunity. Further, Surina has made no claim that complete transactional immunity, both state and federal, would be required in order to compel her testimony, and neither has the real party in interest in the *Compton* case. Also the state has made no claim that mere use and derivative use immunity on its part would suffice. Thus, we need not address the issue of the scope of the immunity in this case. Until we have received the recommendation of the Advisory Committee, or until we are faced directly with the issue and it is adequately addressed by the parties, we do not regard it as appropriate to decide it. We do note that any immunity grant less than that approved in *Kastigar* (use and derivative use immunity) is unconstitutional; and that a grant of transactional immunity on both state and federal levels would clearly suffice to justify compelling the testimony, under any standard. We leave for another day the question of what the Alaska Constitution requires in this respect. And we leave, either to the legislature or to our own determination after the recommendation of the Advisory Committee on Criminal Rules is submitted, the policy question of which option within the constitutional limits is preferable.

It is important to define the ambit of the prosecutor's discretion. As was noted in *In Re Daley*, 549 F.2d 469, 480 (7th Cir. 1977),

Viewing the immunity grant in its proper perspective as a powerful executive implement, it must be recognized that prosecutorial agreement may effectively function, extra-statute, to confer immunity other than through a legislatively-authorized method. Through the exercise of his inherent discretion, the federal prosecutor retains control over the nature and scope of immunity granted. However, in promising to refrain from prosecution in order to secure a witness' cooperation, the federal prosecutor must act within the ambit of his authority, *cf. People v. Ford*, 99 U.S. 594, 25 L.Ed. 399 (1878), and may not permissibly bind officials in jurisdictions within which he possesses no right of action. [citations omitted]

▆▆▆▆ Our conclusion is that a state prosecutor's grant will serve to bind the state to whatever promise is made—i. e., to use and derivative use and/or transactional immunity, even in other judicial districts. A state prosecutor's promise of use and derivative use immunity will also bind the federal government, under the ruling in *Murphy v. Waterfront Commission of New York*, 378 U.S. at 77–78, 84 S.Ct. at 1608–09, 12 L.Ed.2d at 694 (1964). However, a state grant of transactional immunity will require independent endorsement from federal authorities before it will absolutely preclude a federal prosecution.

Although selecting which personnel in the prosecutors' offices will be authorized to make such grants of immunity is an important aspect of the entire scheme, we believe that this aspect of the problem is better left to administrative determination. The Attorney General should, we think, establish guidelines concerning the authority of District Attorneys and Assistant District Attorneys to make such promises. Until then, we will presume that all duly admitted District Attorneys and Assistant District Attorneys act as the agents of the state for this purpose, and will give effect to immunity promises made by any of them.

As we have concluded that the prosecutor and court had the inherent authority, despite the absence of any enabling statute, to make the grant of immunity in this case, which would be binding; and as neither appellant Surina nor the real party in interest in *Compton* argues that the scope of the

immunity grant was too narrow to justify compelling the testimony; and as the procedures followed were in substantial compliance with Rule 732 of the Uniform Rules of Criminal Procedure, it follows that the state must prevail.

The contempt order of the superior court in the *Surina* case is affirmed.

As to the *Compton* case, an order in the nature of mandamus will issue to the superior court, to reconsider its denial of the application to compel testimony in light of this opinion.