Roy D. GARIBAY and Lenora J. Amato, Appellants,

v.

STATE of Alaska, Appellee.

No. 6246.

Court of Appeals of Alaska.

Feb. 18, 1983.

Dick L. Madson, Cowper & Madson, Fairbanks, for appellants.

John B. Gaguine, Asst. Atty. Gen., and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Defendants Roy Garibay and Lenora Amato[1] were convicted of promoting prostitution in the second degree in violation of AS 11.66.120(a).[2] They subsequently filed this appeal, in which they jointly allege that numerous errors committed by the trial court require reversal of their conviction and a new trial. We affirm.

### I. STATEMENT OF THE CASE

Evidence produced at trial indicates that, on December 15, 1980, Kelly Zavala answered a help-wanted ad placed in the Fairbanks Daily News Miner by the Paris Massage Parlor. She spoke with Amato, who explained to Zavala that the work would include not only giving massages, but also prostitution; Amato also told Zavala that she would be working both at the Paris Massage Parlor and at motels. The basic charge for patrons of the massage parlor was $60 for a massage; various sexual acts required payment of additional fees. Customers of the Paris Massage Parlor could receive the services of a "masseuse" on premises or, if they chose, they could call the parlor from various motels in Fairbanks and request that a "masseuse" be sent to their room. Visits to customers in their motel rooms were commonly referred to as "outcalls" by parlor employees. The parlor accepted both cash and credit cards (VISA and Mastercharge); if credit cards were used, charge slips were filled out indicating that films or miscellaneous items had been purchased from the International Book Store, an establishment located next to the Paris Massage Parlor.

Upon accepting employment with Paris Massage, Zavala signed a document that characterized her as an "independent con-

---

1. We will refer to Garibay and Amato collectively as "defendants."

2. AS 11.66.120(a) provides:
 *Promoting prostitution in the second degree.* (a) A person commits the crime of promoting prostitution in the second degree if he (1) manages, supervises, controls, or owns, either alone or in association with others, a prostitution enterprise other than a place of prostitution.

tractor." At the end of a night's work, Zavala would place all of the money she received from customers in an envelope, write her name on it and write down the amount of money enclosed. She would turn the envelopes over to either Garibay or Amato, who would return half of the money the next day. Zavala worked for approximately ten days and then informed police about the prostitution-related activities conducted by the Paris Massage Parlor.

Upon receiving Zavala's complaint, police obtained a warrant authorizing a search of the Paris Massage Parlor and the adjacent International Book Store. The search produced various items such as credit card slips from massage parlor customers, used condoms, and records indicating the number of customers, or "tricks," for a given evening and the amount of money collected. At trial, in addition to Zavala's testimony and the testimony of the police officer executing the search warrant, the state produced a recipient of outcall services as a witness. The customer testified that he had stayed at the Captain Bartlette Inn on the night of December 9, 1980, that he had called a massage parlor and requested outcall services, that a woman came to his hotel room, and that he purchased sexual services from her for the sum of $200, which he charged on his VISA card. A copy of the charge slip reflecting the transaction was admitted into evidence and indicated a $200 purchase from the International Book Store.

## II. VALIDITY OF SEARCH WARRANTS

Defendants first challenge the validity of two search warrants, both issued on December 15, 1980, one for the search of the Paris Massage Parlor and the International Book Store (S–80–175), and the other for the search of Garibay's residence (S–80–176). None of the items seized during the search of Garibay's residence were used in evidence at trial. Thus, defendants' challenge to the validity of the second warrant is moot.

Defendants' challenge to the validity of the warrant authorizing search of the Paris Massage Parlor and the International Book Store is two-fold: first, they maintain that the warrant failed to describe with adequate specificity those articles that could be searched for and seized; second, they maintain that an insufficient showing was made to justify execution of the warrant at night. Neither claim is persuasive.

### A. *Specificity of the Warrant*

The challenged warrant authorized seizure of the following items:

(1) records concerning payments to "employees" for massaged [sic] or sexual acts;

(2) records establishing connections of the Paris Massage Parlor with the International Book Store;

(3) contraband drugs—especially cocaine; and

(4) monies paid for massages and sexual acts and their [sic] envelopes in which the monies are contained.

Defendants contend that this language was overbroad in that it did not identify the items sought in sufficient detail.

This court must base its determination of issues involving specificity of articles described in search warrants upon a consideration of the totality of the circumstances in the individual case. The specificity requirement is a practical one, and thus the amount of specificity required will vary, based upon the nature of the articles to be seized and the information available to police at the time a warrant is issued. *See Davis v. State,* 499 P.2d 1025, 1030–31 (Alaska 1972), *rev'd. on other grounds,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Bell v. State,* 482 P.2d 854, 860 (Alaska 1971).

The description contained on the face of the warrant in this case was relatively specific. For example, the warrant did not authorize the seizure of "records," generically, but rather permitted seizure

only of "records concerning payments to 'employees' for massaged [sic] or sexual acts." Similarly, the warrant did not authorize seizure of all monies that might be found on the premises, but rather specified that only "monies paid for massages and sexual acts and their [sic] envelopes in which the monies are contained" could be seized. Furthermore, considering the nature of the property that was being searched for and the evidence available to police at the time the warrant was issued, substantially greater specificity would not have been practically possible. We conclude that the warrant authorizing search of the Paris Massage Parlor and the International Book Store was sufficiently specific in its description to assure that officers executing the warrant received adequate guidance as to the scope of the search authorized and the nature of the articles that could be seized. *See e.g., United States v. Cortellesso,* 601 F.2d 28, 30 (1st Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980); *James v. United States,* 416 F.2d 467, 473 (5th Cir.1969), *cert. denied,* 397 U.S. 907, 90 S.Ct. 902, 25 L.Ed.2d 87 (1970).

### B. Justification for Nighttime Search

Defendants' second challenge to the validity of the search warrant is based on the argument that an inadequate showing was made to justify a nighttime search, pursuant to Alaska Criminal Rule 37(a)(3)(iv). This rule permits a magistrate to authorize a search between the hours of 10 p.m. and 7 a.m. only if the affiant "is positive that the property is . . . in the place to be searched."

Defendants maintain that, in order to meet the standard set out in Rule 37(a)(3)(iv), Zavala's affidavit or testimony in support of the warrant was required to provide explicit and detailed information "showing that the affiant can identify items which can only be found at night because the illegal·enterprise only occurred at night." We think defendants have simply misread the positivity requirement. In

*Johnson v. State,* 617 P.2d 1117, 1123 (Alaska 1980), the supreme court construed the word "positive" in Rule 37(a)(3)(iv) to require nothing more than a showing that the evidence sought is "reasonably certain" to be found upon the premises to be searched. The court in *Johnson* expressly noted that the positivity requirement contained in Criminal Rule 37(a)(3)(iv) was not intended to accomplish the objective of restricting nighttime searches only to those cases where a daytime search would be ineffective. *Id.,* at 1123 n. 7.

▇ We must, in this case, bear in mind the need to give great deference to the decision made by the magistrate in issuing a warrant authorizing a nighttime search. Having reviewed the transcript of testimony in support of the application for the search warrant challenged by defendants, we conclude that the magistrate acted well within the broad scope of permissible discretion in deciding that the articles described in the warrant were reasonably certain to be present on the premises of the Paris Massage Parlor and the International Book Store. We therefore uphold the validity of the nighttime warrant.

### III. EVIDENTIARY ISSUES

Defendants next contest a series of evidentiary rulings made by the trial court.

### A. Evidence Relating to Ownership of Paris Massage

Defendants first claim that various items tending to show their proprietary interest in the Paris Massage Parlor were improperly admitted into evidence because ownership of the massage parlor was not in issue and was irrelevant, and because connection of defendants with operation of the massage parlor—which was shown to have been run as a house of prostitution—was prejudicial to their case. Defendants' claim that this evidence was irrelevant and prejudicial hinges on the provision of AS 11.66.120(a)(1) that restricts the definition of promoting prostitution in the second degree to instanc-

**1356**

es involving "a prostitution enterprise other than a place of prostitution." Thus, defendants maintain that allowing the state to establish their connection to the Paris Massage Parlor was tantamount to admitting evidence of other misconduct in violation of Alaska Evid.R. 404(a).

▮ Defendants' position on this issue is untenable. While evidence of other misconduct by the accused is inadmissible under Evidence Rule 404(a) when relevant only to establish a general propensity to commit the type of offense charged, presentation of such evidence may be permitted in the discretion of the trial court if it is relevant to establish facts specifically in issue and if its relevance outweighs the potential for prejudice that it might create. Here, there was evidence establishing that prostitutes working on an outcall basis had regularly been supplied to guests of various Fairbanks motels by the Paris Massage Parlor. Proof of defendants' proprietary interest in and involvement with the massage parlor was therefore directly relevant to establish that they knew of and were involved with off-premises prostitution activities conducted by these businesses. In this case, the evidence concerning defendants' ownership and operation of on-premises prostitution through the Paris Massage Parlor and the International Book Store was inextricably tied to evidence of their involvement in conducting off-premises, or outcall, prostitution services. We therefore conclude that evidence of defendants' connections with the massage parlor and book store was properly admitted.[3]

**3.** Although we believe defendants are correct in their assertion that some of the exhibits admitted were too remote in time to be of much relevance, we think that admission of these items had no prejudicial effect and constituted harmless error.

**4.** The only objections made by the defense to this line of inquiry were directed against the admission of various documents tending to show defendants' ownership of the Lincoln Continental. This objection was based solely on defendants' contention that a sufficient connection had not been established between the automobile which they owned and the one

### B. Ownership of 1974 Lincoln Continental

▮ Defendants similarly contend that certain evidence offered to show that they owned a Lincoln Continental was irrelevant, prejudicial, and should not have been admitted. A review of the evidence discloses that testimony linking defendants to an apparent effort to prevent Zavala from testifying by offering her a 1974 Lincoln Continental as a bribe was expressly elicited by the defense, in the course of its cross-examination of Fairbanks Police Officer James Fitzgerald. Testimony directly linking defendants to the specific Lincoln Continental that was offered to Zavala was elicited by the state on redirect examination of Fitzgerald. No objection was made by the defense to Fitzgerald's testimony on this subject, either on cross-examination or on redirect. Significantly, on redirect examination, Fitzgerald testified, without objection, that Zavala had pointed out a specific automobile as the one which was offered to her by defendants and that Alaska State Trooper computer records showed this automobile to be registered to Amato.[4]

▮ Evidence of tampering with a witness is generally admissible to show guilt of the underlying crime, if the evidence directly connects the accused to the acts of tampering. *See generally* C. McCormick, *Law of Evidence* § 273 at 660–62 (2d Ed. 1972). We do not believe, however, that a definitive ruling on the admissibility of the evidence relating to ownership of the Lincoln is necessary here. Given that testi-

which was allegedly offered to Zavala. Although defendants' objection was well taken when originally made, Officer Fitzgerald's subsequent testimony on redirect examination established a sufficient nexus to show that the Lincoln owned by defendants was the one offered to Zavala. Thus the court's ruling admitting the challenged documents, made after Fitzgerald's testimony on redirect, was appropriate, since the grounds for objection previously raised by defendants were no longer valid. No other reason was stated by defendants in objection to admission of the documents.

mony on this subject was brought out by the defense on cross-examination and was followed up on by the state without objection,[5] we hold that defendants have failed to preserve the issue for argument on appeal. *See* Alaska Evid.R. 103(a)(1).

### C. *Testimony of Customer*

■ Defendants further challenge the admissibility of the credit card receipt reflecting purchase of sexual services on an outcall basis by a customer at the Captain Bartlette Inn; they similarly challenge the admissibility of the customer's testimony. Defendants reason that, because the customer testified that VISA never attempted to bill him for the charge, no act of prostitution occurred, and the challenged evidence was therefore irrelevant. This argument is frivolous. AS 11.66.100(a), which defines prostitution, states: "A person commits the crime of prostitution if he engages or agrees or offers to engage in sexual conduct in return for a fee." Under the plain wording of the statute, actual payment of a fee is not required; an act of prostitution is complete when an offer is extended or an agreement made to engage in sexual conduct in return for a fee. Regardless of whether a bill was ever ultimately sent, the customer's testimony that he agreed to purchase sexual favors for the sum of $200, his testimony that he charged the purchase price using his VISA card, and the VISA charge slip itself, are all highly probative of whether an agreement or offer to engage in sexual conduct in return for a fee was in fact made.

### D. *Zavala's Age*

■ Defendants also contest the admissibility of evidence concerning Kelly Zava-

la's age. Zavala was seventeen years-old at the time she worked for the Paris Massage Parlor. The prosecutor referred to her age in his opening statement, asked Zavala her age on direct examination, and referred to her as a "naive child" during closing argument. Defendants assert that this evidence should have been excluded as irrelevant because, under Alaska law, involvement of children in prostitution is subject to more severe penalties only when they are sixteen years of age or younger. Given the fact that the truthfulness of Zavala's testimony was hotly disputed at trial, we think that the jury was entitled to know her age, since this information could have been of substantial assistance in allowing the jury to evaluate her demeanor and to assess the truthfulness of her testimony at trial. Though some potential for prejudice or confusion might have been created by the fact that Zavala was seventeen years of age, the trial judge appropriately instructed the jury that the defendant's age could not properly be considered as proof of any substantive issue involved in the case. The same point was emphasized by the prosecution in final argument. We conclude that the probative value of the evidence on the issue of Zavala's veracity clearly outweighed any potential for prejudice that this evidence might have had.

### IV. MOTION FOR MISTRIAL

■ Defendants have also alleged that the manner in which the prosecutor referred to Zavala's age and to the possibility of jury tampering during final argument was improper. They contend that a mistrial should have been granted. However, defendants never moved for a mistrial during final arguments. The only motion for

---

5. We note that defendants' counsel, in briefing this issue, neglected to make any reference to the fact that the challenged evidence was primarily elicited during cross-examination by the defense of Officer Fitzgerald and redirect examination by the prosecution. Nor is there any mention in the briefs of the lack of any objection by the defense, except a limited objection

as to a number of documents concerning ownership of the Lincoln Continental. We believe the manner in which this issue has been presented in the defendant's briefs is misleading, and we expressly disapprove of the presentation. *See* Alaska Code of Professional Responsibility, DR 7–102(A)(2).

mistrial occurred during the prosecution's opening statement, when the prosecutor referred to Zavala's age. Since we have concluded that evidence of Zavala's age was admissible, the prosecution's reference to it during his opening statement was not improper. Upon review of the prosecution's final argument to the jury, we conclude that nothing contained therein was so inflammatory, misleading or prejudicial as to require the trial judge to declare a mistrial *sua sponte* or to warrant the attention of this court as a matter of plain error.

## V. IMMUNITY

Defendants further argue that Kelly Zavala was improperly allowed to testify at trial, contending that the prosecution's verbal offer of immunity to her was inadequate and should not have been relied upon by the court in compelling Zavala's testimony.

■ At the time of trial, *Surina v. Buckalew*, 629 P.2d 969 (Alaska 1981) was the only applicable Alaska case dealing with prosecutorial authority to grant immunity. *Surina* held that the district attorney had the inherent authority to grant witnesses immunity. *Id.* at 979. While the court in *Surina* referred to Rule 732 of the Uniform Rules of Criminal Procedure and indicated that this rule provided additional guidance concerning exercise of the authority to grant immunity, the rule was not formally adopted until the court decided *State v. Serdahely*, 635 P.2d 1182 (Alaska 1981). Defendants now contend that the provisions of Rule 732 requiring immunity requests to be submitted by prosecutors in writing invalidate the state's grant of immunity in the present case. Assuming, *arguendo,* that defendants have standing to argue this issue,[6] since Rule 732 was not formally adopted until after the trial in this case, the state's offer of immunity was not invalid

merely because it had not been reduced to writing. In so holding we note that the offer of immunity was plainly stated to the witness on the record, in open court.

## VI. INSTRUCTION DEFINING PROSTITUTION ENTERPRISE

■ Defendants also challenge the trial court's refusal to give an instruction requiring the state to prove that the prostitution enterprise involved in the case was of an ongoing nature. The argument is not well taken. AS 11.66.120(a) sets forth no requirement of continuity in prohibiting the ownership, management, supervision, or control of a prostitution enterprise. Had the legislature intended proof of an ongoing enterprise to be required as a necessary element promoting prostitution in the second degree, it could have so provided. In similar statutory provisions, the legislature has had little difficulty in expressing itself when it intended to require proof of ongoing activity as part of the definition of a criminal enterprise. *See, e.g.,* AS 11.66.-280(4)(B) (defining "gambling enterprise" as a substantially continuous operation or one in which a single daily gross income of $2,000 or more is earned). The trial judge's refusal to give defendants' proposed instruction defining prostitution enterprise was not error.

## VII. SUFFICIENCY OF EVIDENCE

■ Defendants' final challenge is to the sufficiency of the evidence presented at trial. This argument is based on the contention that the document signed by Zavala, which characterized her as an "independent contractor," precludes a finding that defendants managed, controlled, or supervised her in any way. Defendants also rely on an isolated portion of Zavala's testimony in which she stated that she had considered herself free to do whatever she wanted to

---

6. *Compare United States v. Leonard,* 494 F.2d 955, 972 (D.C.Cir.1974), *with Ellis v. United* *States,* 416 F.2d 791, 799 (D.C.Cir.1969).

while working as a prostitute for the Paris Massage Parlor. In deciding this issue, we must consider the totality of the record, construing the evidence in the light most favorable to the state. *Gray v. State,* 463 P.2d 897, 905 (Alaska 1970). We believe that the totality of the evidence leaves ample room for a finding of guilt beyond a reasonable doubt.

Zavala testified that she was hired by Amato; she went to motels after customers called the massage parlor; one of the defendants told her which days and hours to work; she called the parlor upon arriving and prior to leaving motels; Garibay told Zavala what to wear to work; and defendants would pay her for having sex with the owner of the bookstore. Considering Zavala's testimony in its entirety, we think that reasonable jurors could well have concluded that the employment agreement in which Zavala characterized herself as an independent contractor was little more than a subterfuge and that there was no genuine independent contractor relationship between defendants and Zavala. Defendant's motion for judgment of acquittal was properly denied by the trial judge.

The judgments of conviction are AFFIRMED.