STATE of Alaska, Petitioner,

v.

Kenneth W. JONES, Jr., Respondent.

No. A–1780.

Court of Appeals of Alaska.

March 25, 1988.

---

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for petitioner.

William F. Dewey, Asst. Public Advocate, and Brant McGee, Public Advocate, Anchorage, for respondent.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

On August 14, 1985, a grand jury charged Kenneth W. Jones, Jr., with one count of manslaughter, AS 11.41.120(a)(1), and two counts of assault in the second degree, AS 11.41.210(a)(2). Jones subsequently moved to dismiss the indictment, alleging that the state had reneged on a promise to dismiss the charges; Jones sought to specifically enforce that promise. Superior Court Judge Charles K. Cranston granted Jones' motion, finding that a dismissal was warranted in the interests of justice. *See* Alaska Rule of Criminal Procedure 43. The state petitioned for review of the dismissal. We granted the state's petition pursuant to Alaska Appellate Rule 402(b)(2). We now reverse.

Jones' indictment resulted from an incident in which Jones allegedly threw a lighted "jumping jack" (a type of fireworks) into the back seat of a pickup truck in which he was a passenger. Almost immediately, a fire broke out. Three children in the back seat were badly burned; one of them eventually died. The charges against Jones were evidently premised on the theory that the lighted jumping jack was the sole cause of the fire in the truck. Following his indictment, Jones retained an expert who contradicted this theory. His conclusion was that the fire could not have started in the absence of some other accelerant. He produced a videotape demonstrating how accelerants react in a flash fire. After viewing the videotape, the assistant district attorney handling the case in Kenai apparently became concerned that this evidence might make it difficult to prove that Jones recklessly caused the death and injuries involved in the case, since, in view of the expert's conclusions, it appeared that Jones' act of throwing a lighted jumping jack inside the truck might not in and of itself have posed a "substantial and unjustifiable risk" that a fire would occur. *See* AS 11.41.120 and 11.81.900(a)(3).

On July 15, 1986, the assistant district attorney in Kenai telephoned Jones' attorney and informed him that Jones' case would be dismissed. The prosecutor stated that she would file dismissal documents later that day. Without objection from the prosecutor, Jones' counsel indicated that he would notify Jones of the state's decision. Upon being notified by his counsel of the impending dismissal, Jones told friends and family members that his case was being dismissed. He also made airline reservations to visit his father in Arkansas.

Within a day after telling Jones' counsel of her intent to dismiss the case, the assistant district attorney in Kenai was told by the chief prosecutor's office in Juneau that her decision to dismiss the case had been overridden. She was instructed not to file a notice of dismissal. On July 16, Jones' counsel received a message from the assistant district attorney stating that the case would not be dismissed. He was later informed that the dismissal papers had not been filed and that the state had decided to submit the case to the Anchorage District

Attorney's office for an independent review to determine whether it should go forward.

In response, Jones' counsel moved for an order of dismissal enforcing the Kenai assistant district attorney's original promise to dismiss the charges. At a hearing on the motion, Jones asserted that the fact that he had told his friends and family of the dismissal and had made plans to travel to Arkansas established detrimental reliance on the state's promise to dismiss. Jones also maintained that he had suffered emotional distress as a result of the state's action.

Although Judge Cranston found that Jones' showing of detrimental reliance was inadequate to entitle him to specific performance as a contractual matter, the judge nevertheless concluded that, under the circumstances, a dismissal of the case was necessary to further the interests of justice:

Here a definite unequivocal promise to dismiss this prosecution was made by the attorney who throughout its course had assumed responsibility for its prosecution as the State's representative. Further, the promise was made after the District Attorney had been informed that it would be communicated to defendant, and without the prosecutor's objection to communicating the promise to defendant. As expected, the promise was communicated to defendant who, not unforeseeably, communicated the fact of dismissal to friends and relatives....

Not unexpectedly when the decision not to dismiss was communicated to defendant two days later, defendant suffered a loss of faith in the credibility of counsel and of the judicial system.

The court is not prepared to go so far as to conclude that the detriments suffered by defendant in the form of credibility loss, embarrassment and mental anguish are substitutes for consideration necessary to support a contract between him and the state incident to the dismissal of this prosecution. Such a conclusion may well be justifiable. More important considerations relate to the effect of the State's change of position upon the credibility of the judicial system and the objective of fostering good faith communications and representations between counsel. To further those principles, the court is vested with inherent authority, even without strict application of contract principles, to enforce the agreement by the prosecutor responsible for the litigation, to dismiss the prosecution, cf. Surina [v. Buckalew, 629 P.2d 969 (Alaska 1981)].

In challenging Judge Cranston's conclusion, the state relies on cases involving plea and immunity agreements. In general, the cases relied on by the state stand for the proposition that the prosecution is not bound by an agreement until the defendant detrimentally relies on it by entering a plea of guilty, giving testimony, or otherwise incurring legal prejudice to the defense case. See, e.g., Mabry v. Johnson, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

Alaska case law comports with this view. In Turk v. State, 662 P.2d 997 (Alaska App.1983), the defendant argued that the trial court erred in failing to specifically enforce an agreement with the district attorney in which Turk would be allowed to plead to a lesser-included offense. Turk conceded that he had not detrimentally relied on the state's representation. We held that, even assuming an actual agreement existed between the parties, the proper remedy for breach of the agreement was withdrawal of the defendant's plea, rather than specific performance, because there had been no detrimental reliance on Turk's part. 662 P.2d at 1000. See also Smith v. State, 717 P.2d 402, 407 (Alaska App.1986) (Singleton, J., concurring).

In Surina v. Buckalew, 629 P.2d 969 (Alaska 1981), the supreme court held that a prosecutor's promise of immunity would be binding on the prosecution when given in exchange for a defendant's surrender of the privilege against self-incrimination. Surina presents a useful contrast to the present case, for general contract principles would support the remedy of specific performance in the situation contemplated

by *Surina.* There, the state's offer of immunity was held to become enforceable upon the actual giving of testimony by the defendant—an act amounting to legal prejudice, since it entails surrender of the constitutionally protected right to silence.

■ On the facts of the present case, we conclude that the state's promise to dismiss charges against Jones did not become subject to specific performance. As recognized by the trial court, Jones' communications with friends and relatives concerning the dismissal, his arrangements for travel to Arkansas, and his emotional distress upon learning of the state's decision to continue with the prosecution did not, either individually or collectively, place Jones at any significant disadvantage in attempting to defend against the charges against him, and so, do not amount to legal prejudice warranting a finding of detrimental reliance on the state's promise.

Nor are we able to conclude that the circumstances of this case warrant a dismissal under Alaska Criminal Rule 43(c). Rule 43(c) provides:

> *In Furtherance of Justice*: The court may, either on its own motion or upon application of the prosecuting attorney, and in furtherance of justice, order an action, after indictment or waiver of indictment, to be dismissed. The reasons for the dismissal shall be set forth in the order.

While Criminal Rule 43 vests the trial court with broad discretion to dismiss, it does not grant unlimited authority. For example, the court cannot intrude into the executive function by choosing which charge to bring against a defendant or which defendant should be prosecuted. *State v. Carlson,* 555 P.2d 269, 271–72 (Alaska 1976). Nor can the court direct the state to prosecute a given case. *Public Defender Agency v. Superior Court,* 534 P.2d 947, 950–51 (Alaska 1975).

■ Here, the court, relying on its inherent authority to dismiss under Rule 43, effectively precluded the state from prosecuting Jones. In deciding to dismiss on this basis, the court reasoned that the state's premature announcement of a commitment to dismiss charges reflected poorly on the credibility of the court system and might interfere with "the objective of fostering good faith communications and representations between counsel." Similar reasoning was relied upon by the court in *Cooper v. United States,* 594 F.2d 12, 18–19 (4th Cir.1979), but was later disapproved by the United States Supreme Court. In *Mabry v. Johnson,* 467 U.S. at 511, 104 S.Ct. at 2548, the Supreme Court stated:

> Neither is the question whether the prosecutor was negligent or otherwise culpable in first making and then withdrawing his offer relevant. The Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty. Here respondent was not deprived of his liberty in any fundamentally unfair way.

*See also Plaster v. United States,* 789 F.2d 289, 292 (4th Cir.1986) (acknowledging that *Cooper* was overruled by *Mabry* but distinguishing *Plaster* from *Mabry* and *Cooper* ).

We find *Mabry* 's holding to be persuasive. In the absence of actual legal prejudice to the defendant, the adverse consequences relied on by Judge Cranston as a basis for dismissal—while undeniably reflecting legitimate concerns—are simply too remote and tangential in nature to justify the exercise of the court's dismissal power under Criminal Rule 43. Although actual bad faith on the part of the prosecution or a history of similar occurrences could conceivably militate in favor of dismissal as a deterrent measure, dismissal of an otherwise valid prosecution is a price too high for the public to pay as a sanction for what appears to be an unfortunate but isolated instance of miscommunication and misdirection within the internal decision-making process of the state prosecutor's office.

By no means do we mean to condone the manner in which the state has handled Jones' case thus far. Nor do we minimize the genuine emotional distress and consequent loss of faith in the judicial system that Jones has undoubtedly suffered. We

hold only that these considerations, standing alone, do not justify a dismissal in the interests of justice.

The superior court's order of dismissal is REVERSED.